UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN WATKINS, et al., | Case No.  21-cv-00617-JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| MGA ENTERTAINMENT, INC., | Re: Dkt. No. 17 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiffs Robin Watkins and Adam Sensney bring this product defect case as a putative class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(1).  They assert claims for negligence, breach of express and implied warranties, and violation of California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") against MGA Entertainment, Inc. ("MGA"), which manufactures, sells and distributes a toy line called L.O.L. Surprise!, based on allegations that a product in the line, the 2-in-1 Glamper Fashion Camper ("Glamper"), had a defective button in which a child's finger could become trapped.  According to Plaintiffs, Watkins' daughter's finger did, in fact, become trapped and firefighters had to cut the Glamper off.  Presently before the Court is MGA's Motion to Dismiss First Amended Complaint ("Motion"), in which MGA asserts that all of Plaintiffs' claims fail to state a claim under Rule 12(b)(6) and should be dismissed. For the reasons stated below, the Motion is GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.       BACKGROUND

### A.       The First Amended Complaint

This case involves an alleged defect in MGA's toy Glamper, a plastic recreational vehicle that expands to two feet tall and three feet wide. First Amended Complaint ("FAC") ¶ 2. According to Plaintiffs, "[o]ne of the selling features of the Glamper is that the front of the Glamper detaches from the camper portion to become its own car." *Id.*  ¶ 3.  This is accomplished by "push[ing] a small button at the bottom of the [G]lamper and simultaneously pull[ing] the two pieces apart." *Id.*  ¶ 4.  Once expanded, accessories in the back portion of the Glamper can be accessed, including "a 2-story water slide, pool, bunk beds, D.J. Booth, Café, Fashion Runway, and Vanity Room with mirrors, opening drawers and closets." *Id.*  ¶ 2.

Plaintiffs allege that "[d]ue to the product's defective design, depressing the button while simultaneously pulling allows the user's finger to get caught between the button and the piece being slid out." *Id.* ¶ 4.  In particular, Plaintiffs allege, "The design of the release button allows a user's finger to become trapped between the depressed button and the hole into the bottom of the Glamper." *Id.*  ¶ 23. "When a user tries to pull their entrapped finger out, it only serves to narrow the exposed hole and tighten the entrapped finger further." *Id.*

Plaintiffs allege that "[t]here have been numerous reports of injury, including but not limited to Plaintiff Watkins' child's own injuries as a result of use of the Glamper." *Id.*  ¶ 5.  They further allege that MGA was aware of these injuries but instead of recalling the product, placed a "Safety Notice" on its Facebook page, a warning that was "woefully inadequate in its wording" and also fell short because it "assume[d] users of the product are actively on Facebook and follow the company's Facebook page." *Id.* ¶ 6.

According to Plaintiffs, MGA released the Glamper on July 22, 2019 and sold it through its own website and numerous retailers including, but not limited to, Amazon, Walmart, Toys R Us, Kohls, and Best Buy. *Id.* ¶ 7.  Plaintiffs allege that "MGA warranted that the Glamper was appropriate for ages 3+." *Id.* ¶¶ 8, 55, 69, 78.  They further allege that "[t]he only warning provided with the Glamper states "CHOKING HAZARD—Small Parts. Not for children under 3 yrs." *Id.*  ¶ 9.  While the manual listed certain "Important Information," Plaintiffs allege,

United States District Court
Northern District of California

"[n]othing in the 'Important Information' alerts users to the dangers lurking underneath the Glamper." *Id.* ¶¶ 10-11.   Plaintiffs allege that "[d]ue to the significant injuries suffered by numerous children as a result of using the Glamper, its design was modified" to include a rubber gasket around the button so that "fingers cannot get caught in the button." *Id.* ¶ 12.

There are two plaintiffs in this action: Robin Watkins and Adam Sensney. *Id.* ¶¶ 13-14. According to the FAC, in 2019, Watkins' eight-year-old child, R.C., received the Glamper as a Christmas present from her grandmother, who purchased the Glamper on December 4, 2019 for $89.99. *Id.* ¶ 18.  On December 25, 2019, R.C.'s father assembled the Glamper, following the instructions provided by MGA with the Glamper. *Id.* ¶ 19.  On February 10, 2020, "R.C. was playing with the Glamper in the family room when her mother heard loud screaming." *Id.* ¶ 20. According to Plaintiffs, "R.C. was on the floor with the Glamper upside down, screaming in agony" with her right thumb "stuck in the defective release button." *Id.* ¶¶ 20-21.  Plaintiffs allege "R.C.'s finger was trapped in the Glamper for an hour and a half causing considerable swelling and loss of circulation to her thumb." *Id.* ¶ 24.  According to Plaintiffs, seven members of the local fire department had to "saw and cut the Glamper apart" to remove it from R.C.'s thumb, which took thirty minutes.  *Id.*

Plaintiffs allege that on the day of the incident, Watkins called and emailed MGA to inform them of what had occurred and requested that MGA contact her immediately. *Id.* ¶ 25.  On February 20, 2020, after having received only an automated email response, Watkins again emailed MGA. *Id.* ¶¶ 25-26.  Plaintiffs allege that Watkins "finally received a phone call from MGA" and was told by the individual who spoke to Watkins that "the product had been redesigned and the decision to alert consumers currently in possession of the defective model was not within her control." *Id.*  ¶ 27. Plaintiffs allege MGA sent Watkins fifteen LOL. Surprise! Dolls to "appease" her and that Amazon reimbursed her for the purchase price of the Glamper. *Id.* ¶ 29.

The FAC alleges that Plaintiff Sensney "came in possession of the Glamper when it was purchased for $89.99 from an online retailer for his daughter, age 7, by his mother-in-law, and shipped to his home in Walnut Creek." *Id.*  ¶ 30; *see also id.*  ¶ 66 ("Plaintiff purchased the

United States District Court
Northern District of California

Glamper manufactured by Defendant, or in the alternative, the product was purchased by a close family member for his child's use.").[2] According to Plaintiffs, "Plaintiff Sensney learned of the traumatic incident sustained by R.C. and took the Glamper away from his daughter."  *Id.* ¶ 31. Sensney "does not allow his daughter to play with [the Glamper] for fear of injury similar to R.C." *Id.*  Plaintiffs allege that Sensney has not been reimbursed for the Glamper.  *Id.* ¶ 32.

Plaintiffs seek to certify a class of "[a]ll persons who had or still have the original version of the MGA L.O.L Surprise! 2-in-1 Glamper Fashion Camper."  *Id.*  ¶ 33.  The putative class "specifically excludes damages for personal injury."  *Id.*  ¶ 37. Plaintiffs assert claims for negligence (Claim One), breach of implied warranty (Claim Two), breach of express warranty (Claim Three), violation of the CLRA, and breach of the UCL.  All of these claims are asserted by Plaintiff Sensney and the putative class; Plaintiff Watkins joins in only on the CLRA claim.

**B.    The Motion**

In the Motion, MGA contends all of Plaintiffs' claims must be dismissed for failure to state a claim.  MGA argues that Claim One, asserted only by Plaintiff Sensney, fails because under the economic loss rule, a plaintiff who experiences purely economic injury cannot bring a negligence claim based a defective product in the absence of a special relationship between the parties, which does not exist between MGA and Sensney.  Motion at 5-6.[3]

MGA argues that Plaintiffs' breach of express warranty claim (Claim Three) is defective for several reasons.  First, it contends a claim for breach of express warranty requires that the exact terms of the warranty must be pled, but here Plaintiffs allege only that "MGA warranted that the Glamper was appropriate for ages 3+" (FAC ¶¶ 8, 55, 69, 78) without providing the specific wording of the warranty or any facts about where it can be found.  *Id.*  at 7.

Further, MGA contends that to the extent Plaintiffs are relying on the product manual, which has "Age 3+" printed adjacent to the "choking hazard" language cited by Plaintiffs (FAC ¶¶

---

[2]Despite the suggestion in Paragraph 66 that the Glamper may have been purchased by Sensney himself, Plaintiffs' counsel stipulated at oral argument that the Glamper was, in fact, purchased by his mother-in-law.

[3] At oral argument, Plaintiffs stipulated to the dismissal of the negligence claim.  Therefore, the Court GRANTS the Motion as to Claim One, which is dismissed with prejudice, and will not address MGA's challenge to the sufficiency of that claim.

4

United States District Court
Northern District of California

1   9, 56, 70, 79), this language is not an express warranty that the product is safe for children three

2   years and older but instead, a warning that it is *unsafe* for children under three.[4]  *Id.*  According to

3   MGA, "A warning that a product may not be safe in one situation cannot be reasonably read as a

4   guarantee that it will be safe in all others."  *Id.*

5          Even if the "Age 3+" printed in the manual were an express warranty, MGA asserts, it

6   would relate only "to the potential choking hazard 'small parts' may pose to children under three

7   years of age" and would have nothing to do with the claim in this case, involving an alleged harm

8   unrelated to the potential choking hazard for children under three.  *Id.* (citing *In re Google*

9   *Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835–36 (N.D. Cal. 2020)).

10          Next, MGA argues that Plaintiffs have not stated a claim for breach of express warranty

11   because such a claim is based on the premise that the alleged promise was "part of the basis of the

12   bargain" and that is not the case here because neither plaintiff bought the product.  *Id.* at 8

13   (quoting *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2012 WL 12844724, at *3

14   (S.D. Cal. Feb. 3, 2012)).

15          MGA also argues that Plaintiffs cannot state a claim for breach of express warranty based

16   on the 30-day limited warranty on the Glamper covering manufacturing defects.  *Id.* at 8.  MGA

17   concedes that this warranty is not mentioned in the complaint but asks the Court to take judicial

18   notice of it.  *Id.*;  *see also* RJN, Ex. A (30-Day Warranty). According to MGA, the 30-day

19   Warranty does not apply because: 1) neither plaintiff is the original purchaser of the Glamper; 2)

20   it covers only manufacturing defects whereas Plaintiffs' FAC alleges a design defect; 3) as to

21   Watkins, the allegations show the incident with R.C. occurred more than 30 days after her mother

22   purchased the Glamper; and 4) neither plaintiff has alleged any injury because the FAC does not

23   assert any personal injury and neither plaintiff bought the product.  *Id.*  at 8-10.  MGA argues

24

---

25   [4] MGA apparently intended to request that the Court take judicial notice of the product manual,
    which purportedly shows that "Ages 3+" is printed adjacent to the "choking hazard" warning.  *See*
26   Motion at 7 (citing RJN, Ex. B in support of its assertion that "Ages 3+" is adjacent to the
    "choking hazard" warning in the product manual). MGA did not, however, request judicial notice
27   of the product manual or provide a copy of it to the Court.  Instead, RJN, Ex. B is a copy of
    "Assembly Bill 292, as it was introduced to the California Legislature on January 21, 1970, Title
28   1.5 Consumers Legal Remedies Act."

1 further that even if the "3+" language were an express warranty that the Glamper was appropriate

2 for children three and up, "it would still have to be read in conjunction with the other conditions in

3 MGA's Limited 30-Day Warranty." *Id.* at 10 (citing *Resnick v. Hyundai Motor Am.*, No. CV 16-

4 00593-BRO, 2017 WL 6549931, at \*10 (C.D. Cal. Aug. 21, 2017)). Therefore, MGA asserts,

5 Plaintiffs' claim for breach of express warranty would fall short because neither plaintiff was an

6 "original purchasers" and "because one or both fail to allege harm within the 30-day warranty

7 period." *Id.*

8   MGA argues that Plaintiffs' claim for breach of implied warranty (Claim Two) also fails to

9 state a claim. *Id.* at 10-12. As a preliminary matter, MGA emphasizes that this claim is a claim

10 for breach of the implied warranty of fitness for a particular purpose and that it is asserted only by

11 Sensney. *Id.* at 10. The claim is insufficiently alleged, MGA asserts, because under California

12 law there must be privity of contract between a plaintiff asserting such a claim and the defendant

13 and Sensney is not in privity with MGA, having not bought the Glamper. *Id.* at 10 (citing *Blanco

14 v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058–59 (2008); *Clemens v. Daimler

15 Chrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("an end consumer . . . who buys from a

16 retailer is not in privity with a manufacturer.")).

17   To the extent that Plaintiffs seek to invoke the exception to the privity requirement

18 recognized by some courts for intended third party beneficiaries, MGA argues that this Court has

19 already found that that exception does not apply in the product liability context. *Id.* (citing *In re

20 Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 785–88 (N.D. Cal. 2017)). According to MGA,

21 "Even if such an exception existed, it would mean only that Sensney's mother-in-law might be

22 able to bring an implied-warranty claim, not that Sensney could." *Id.* Under *Clemens*, however,

23 neither Sensney nor his mother-in-law can assert such a claim as they did not purchase the

24 Glamper from MGA, MGA contends. *Id.* (citing *Garcia v. Doe White Trucking Co.*, No. 20-CV-

25 00134-SI, 2020 WL 3061784, at \*2 (N.D. Cal. June 9, 2020)).

26   Even if Plaintiffs adequately alleged privity, MGA argues, the claim is insufficiently

27 alleged because a claim for breach of an implied warranty of fitness for a particular can only be

28 established on the basis of a warranty of fitness for use for a purpose *other than* the product's

United States District Court<br>Northern District of California

ordinary purpose. *Id.* at 11-12 (citing *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995); *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2021 WL 718839, at *22 (N.D. Cal. Feb. 24, 2021)).  Here, MGA argues, "the only 'particular purpose' alleged is the intent to use the Glamper as a children's toy[,]" which "is the ordinary purpose of the Glamper, not a particular purpose specific to this plaintiff."  *Id.* at 12 (citing FAC ¶ 67).

MGA argues further that both the CLRA and UCL claims sound in fraud and therefore must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at 12.  As to the UCL claim, MGA recognizes that Plaintiffs assert this claim based not only on fraudulent conduct but also on "unlawful" and "unfair" conduct, *id.* (citing FAC ¶¶ 106 (alleging that the "unlawful" acts included "representing that the Glampers were of a particular standard, quality, or grade (i.e., fit for use by children), when in fact they are not," in violation of the CLRA),  112 (alleging that the "unfair" acts included "the defective manufacture, misleading sale, and deceptive and untrue marketing and representations")), but contends that the heightened pleading standard nevertheless applies because these allegations also are grounded in fraud.  *Id.* (citing *Kearns*, 567 F.3d at 1125–26). According to MGA, Plaintiffs fail to meet the heightened pleading standard that applies to the UCL and CLRA claims for several reasons.  *Id.*

First, MGA contends UCL and CLRA claims based on fraud require the plaintiff to demonstrate reliance on some statement or omission that led them to act differently than they would have had the omitted information been disclosed or the false statement not been made.  *Id.* (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)).  MGA contends Plaintiffs have failed to allege any such reliance.  *Id.*  It further asserts that Plaintiffs have not alleged any affirmative misrepresentations upon which anyone relied, much less "where, when or how" such reliance occurred.  *Id.* at 13.  To the extent the claim is based on a failure to disclose, MGA argues, there is a duty to disclose only in one of four scenarios, namely, when "(1) [there is] a fiduciary relationship; (2) defendant made partial representations to plaintiff that were misleading because defendant omitted material facts; (3) defendant actively concealed material facts from plaintiff; or (4) defendant had exclusive knowledge of facts that would have been material to plaintiff."  *Id.* (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). MGA argues that none of these

United States District Court
Northern District of California

applies here. *Id.*

MGA argues that Plaintiffs do not allege that it is in a fiduciary relationship with them and do not allege any misleading representations with particularity. *Id.* at 13. Likewise, MGA asserts that Plaintiffs' allegation of "active concealment" (FAC ¶ 50) is conclusory, as is its reference to the "exclusive knowledge" theory. *Id.* As to the exclusive knowledge theory, MGA argues that this doctrine requires the plaintiff to allege facts that would show the defendant knew the allegedly omitted information at the time of sale. *Id.* at 14 (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012); *Espineli v. Toyota Motor Sales, U.S.A.*, Inc., No. 2:17-cv-00698-KJM, 2019 WL 2249605, at *5 (E.D. Cal. May 24, 2019)). Further, MGA asserts, such claims are subject to   Rule 9(b)'s heightened pleading standards and require that plaintiffs " 'at a minimum . . . describe the content of the omission and where the omitted information should or could have been revealed.' " *Id.* (quoting *Heber v. Toyota Motor Sales U.S.A.*, Inc., No. SACV 16-01525 AG, 2018 WL 3104612, at *6 (C.D. Cal. June 11, 2018) (quoting *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014)). And finally, MGA argues that where a product is covered by an express warranty and the alleged defect manifested only after that warranty expired, a plaintiff must allege the defect posed an "unreasonable safety hazard." *Id.* (citing *Wilson*, 668 F.3d at 1143; *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833–37 (2006)).

According to MGA, Plaintiffs have not met any of the requirements of the exclusive knowledge doctrine described above. *Id.* In fact, they assert, Plaintiffs expressly allege that MGA did *not* know about the defect at the time of the sale, alleging that " 'Defendant became aware of this defect after the Glamper was sold.' " *Id.* (quoting FAC ¶ 59). To the extent Plaintiffs allege that there were numerous injuries caused by the Glamper and MGA was aware of them, FAC ¶¶ 5-6, MGA asserts that the five internet links to videos showing such injuries "post-date[ ] the only date of sale Plaintiffs allege in the complaint: December 4, 2019." *Id.* Nor have Plaintiffs alleged any omission with particularity, MGA asserts, as it is required to do under Rule 9(b). *Id.* at 15.

MGA also argues that because the 30-day express warrant had already expired, MGA had no duty to disclose even a known defect after that date unless it posed an "unreasonable safety

8

hazard." *Id.*  Plaintiffs have not met that standard, MGA asserts. *Id.*  According to MGA, "the FAC fails to clarify why R.C.'s alleged injury was even *that* significant[,]" given that "the worst injury [the FAC] alleges is 'considerable swelling and loss of circulation' to R.C.'s thumb, without any hint that this caused even temporary harm." *Id.* (citing FAC ¶ 24).  MGA further minimizes the seriousness of the alleged injury "[b]ecause, as one of Plaintiffs' YouTube videos points out, a finger can be easily freed by just pushing down a little harder on the button to create more space[.]" *Id.*

MGA also argues that the CLRA claim fails because under *Schauer v. Mandarin Gems of Cal.*, Inc., 125 Cal. App. 4th 949, 960 (2005) and *Vega v. CarMax Auto Superstores Cal., LLC*, No. B278249, 2018 WL 3216347, at *1–3 (Cal. Ct. App. July 2, 2018), that law requires a direct transaction between the plaintiff and the defendant. *Id.* at 15-19.  MGA points to the CLRA's legislative history, which it contends supports the conclusion that "the Legislature meant to limit the statute to the confines of a particular transaction." *Id.* at 16 (citing RJN, Ex. B (Assembly Bill 292, Reg. Session (Jan. 21, 1970)) & Ex. C (Amended Assembly Bill 292, Regular Session (Cal. May 22, 1970))).  MGA recognizes that there is a split of authority among district courts on this question, but argues that the decisions in which courts have read the CLRA more broadly pre-date *Schauer. Id.* at 17-18 (citing *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003)).  MGA argues further that where, as here, a court is sitting in diversity, "*Erie* requires . . . that to the extent state law is unclear, a federal court should err on the side of the construction that limits liability." *Id.* (citing *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74–77 (1938))).

At a minimum, MGA asserts, the Court should dismiss all of Plaintiffs' claims for equitable relief, including their UCL claim. *Id.* at 19.  According to MGA, these claims fail because Plaintiffs have not alleged facts showing that legal remedies are inadequate. *Id.* at 19-21.  MGA argues further that to the extent Plaintiffs seek prospective injunctive relief, their claims fail because they do not allege facts showing they (or their daughters) are likely to be harmed in the future. *Id.* at 21-22.  Nor do Plaintiffs make clear what conduct they are seeking to enjoin, MGA asserts, stating only that the Court should "enjoin Defendant from continuing its unfair, unlawful,

and/or deceptive practices…." *Id.* at 22 (quoting FAC ¶ 118).

Finally, MGA argues that Plaintiffs should not be given leave to amend, both because they have already amended the complaint once and because they have conceded material facts that defeat their claims, the most significant of which being that they did not purchase the Glamper. *Id.*

### C. Opposition

In their Opposition brief, Plaintiffs contend all of their claims are adequately alleged and request leave to amend to the extent the Court finds that they are not. Opposition at 17.[5]

Plaintiffs argue that they have adequately alleged a claim for breach of express warranty. *Id.* at 14-16. They contend MGA's emphasis on the Glamper's 30-day warranty is misplaced as "exculpatory release provisions" are disfavored under California law, "which recognizes express warranties more broadly in the words and conduct of sellers." *Id.* (citing *Ferrell v. Southern Nevada Off-Road Enthusiasts, Ltd.*, 147 Cal.App.3d 309, 314 (1983)). According to Plaintiffs, "An express warranty may form when a seller's statements or conduct are 'part of the basis of the bargain' between the seller and the buyer." *Id.* (citing Cal. Com. Code § 2313, official cmt. 4). Thus, they contend, section 2313 "focuses on the seller's behavior and obligations (for example, the seller's affirmations, promises, and descriptions of the goods), all of which help define what the seller in essence agreed to sell." *Id.* at 14-15 (citing *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1228 (2010)).

Here, Plaintiffs assert, they have alleged an express warranty that the product was safe for children 3 years and up by alleging that MGA made certain factual affirmations about its product, namely, the statement "Appropriate for ages 3+[,]" which was "further emphasized by the 'Choking Hazard[,]' warning." *Id.* (citing Cal. Com. Code § 2313(1)(a); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985)). Plaintiffs argue in the alternative that "the warnings coupled with the advertised pictures of the Glamper in full expansion is an express warranty that the toy is safe to use in the expanded, advertised way." *Id.* (citing Cal. Com. Code §2313(1)(b), official cmt. 5).

---

[5] As noted above, Plaintiffs stipulated to the dismissal of the negligence claim at the motion hearing and therefore, the Court does not summarize their arguments with respect to that claim.

United States District Court
Northern District of California

1    Plaintiffs further assert that in the case of an express warranty claim, they are not required to show

2    reliance on the seller's statements. *Id.* at 16 (citing Cal. Com. Code § 2313).

3         Plaintiffs also challenge MGA's assertion that they do not state a claim for breach of

4    express warranty because they do not allege any injury. *Id.* at 16. According to Plaintiffs, this

5    argument (which MGA also makes as to the breach of implied warranty claim) flows from MGA's

6    position that the 30-day express warranty – which limits recovery to "either replacement of the

7    defective part, or product replacement of the same or comparable value" – also limits the recovery

8    Plaintiffs can obtain on their claim for breach of express warranty. *Id.* However, that argument

9    fails, Plaintiffs assert, because the 30-day warranty likely doesn't apply to either the breach of

10   express or implied warranty claims and it is likely barred as a matter of public policy. *Id.* (citing

11   Cal. Civ. Code §1791.1(c) ("The duration of the implied warranty of merchantability and where

12   present the implied warranty of fitness shall be coextensive in duration with an express warranty

13   which accompanies the consumer goods, provided the duration of the express warranty is

14   reasonable; but in no event shall such implied warranty have a duration of less than 60 days."); *In*

15   *re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.Supp.2d

16   1077, 1101 (S.D. Cal. 2010) (Where there are sufficient "facts establishing unequal bargaining

17   power such that the weaker party had no meaningful alternative to accepting the powerful party's

18   terms, an express warranty's limitation . . . may be deemed unconscionable.")).

19        Plaintiffs also argue that they have adequately alleged a claim for breach of implied

20   warranty. *Id.* at 4-6. Plaintiffs contend "a plaintiff need only demonstrate that they were harmed

21   by the product or that the product did not have the quality that a buyer would expect" to state a

22   claim for breach of implied warranty. *Id.* at 4. Plaintiffs have pled as much, they assert, by

23   pleading that :1) "Defendant is the manufacturer of the toy in question (FAC ¶ 1)"; 2) "that

24   Plaintiff Sensney's mother-in-law purchased the Glamper as a gift for Plaintiff's young daughter

25   (FAC ¶ 30)"; 3) "Plaintiff expected that the Glamper would pose no risk to his 7-year old, and

26   would safely work as advertised, as a children's toy" but he "learned children like R.C. were

27   injured while trying to operate the toy and was forced to remove the expensive gift in order to

28   protect his child." *Id.*

United States District Court
Northern District of California

1    Plaintiffs further assert that privity is not required to bring an implied warranty claim,

2   citing Cal. Civ. Code § 1792.  *Id.* at 5.  Even if it is generally required, Plaintiffs contend, they fall

3   under the "family exception" to privity.  *Id.* (citing *Hauter v. Zogarts*, 14 Cal.3d 104, 114 fn. 8

4   (Cal. 1975)).  That exception is liberally construed under California law, according to Plaintiffs,

5   and applies here.  *Id.* (citing *Duross v. Home Depot U.S.A., Inc*., No. CV 2:17-7006-SJO (JPRx)

6   2018 U.S. Dist. LEXIS 227228, at *19 (C.D. Cal. Aug. 21, 2018); Cal. Comments to U.C.C. §

7   2318).   Moreover, Plaintiffs assert, Plaintiff Sensney need not establish privity because he is a

8   third-party beneficiary of the transaction.  *Id.* at 5-6 (citing *Gilbert Financial Corp. v. Steelform*

9   *Contracting Co*., 82 Cal. App. 3d 65, 70 (1978) (citing Cal. Civ. Code § 1559)).   In particular,

10   Plaintiffs argue, "[t]he factual record is clear that here Plaintiff and his minor child were the

11   intended beneficiaries of the children's toy purchased by the minor's grandmother" and therefore,

12   that Plaintiff Sensney can assert an implied warranty claim against MGA.  *Id.* (citing *In re: Toyota*

13   *Motor Corp. Unintended Acceleration Mkting., Sales Practices, & Prods. Liab. Litig*., 754

14   F.Supp.2d 1145, 1184 (C.D. Cal. 2010)).

15    Plaintiffs reject MGA's argument that their claims under the UCL and CLRA sound in

16   fraud and therefore must meet the heightened pleading standard of Rule 9(b).  *Id.* at 6-7. They

17   argue that MGA has ignored their allegations asserting claims under the "unlawful" and "unfair"

18   prongs of the UCL.  *Id*. at 7-8 (citing FAC 105-106, 112, 114). Moreover, Plaintiffs assert, even if

19   these claims sound in fraud, they are subject to a "relaxed" heightened pleading standard because

20   the claims are based on omissions rather than misrepresentations.  *Id.* at 8 (citing *Falk v. General*

21   *Motors*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit

22   will not be able to specify the time, place, and specific content of an omission as precisely as

23   would a plaintiff in a false representation claim."); *Eisen v. Porsche Cars N. Am., Inc*., No. CV 11-

24   9405 CAS FEMX, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) ("[T)o plead the

25   circumstances of omission with specificity, [a] plaintiff must describe the content of the omission

26   and where the omitted information should or could have been revealed, as well as provide

27   representative samples of advertisements, offers, or other representations that plaintiff relied on to

28   make her purchase and that failed to include the allegedly omitted information.")).  According to

Plaintiffs, they have met this standard.  *Id.* at 9.

Plaintiffs disagrees with MGA that the CLRA only allows a claim to be asserted on the basis of a transaction between the plaintiff and the defendant, arguing that the broader reading of the CLRA adopted by some courts is correct.  *Id.*  at 9-10 (citing *In re Sony VAIO Computer Notebook Trackpad Litig*., No. 09-CV-2109-BEN-RBB, 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010); *Chamberlan*, 369 F. Supp. 2d at 1144)).

Finally, Plaintiffs argue that it is premature to consider whether remedies at law will be adequate and therefore, the Court should not dismiss its claims for equitable relief.  *Id.* at 17 (citing *Amin v. Mercedes-Benz USA*, LLC, 301 F. Supp. 3d 1277, 1297 (2018); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1186 (2017); *Falk v. GMC*, 496 F. Supp. 2d 1088, 1098 (2007)).

Plaintiffs oppose MGA's Request for Judicial Notice, arguing that the Court should not take judicial notice of the 30-day express warranty (RJN, Ex. A) because it is not mentioned in the complaint and should deny the request as to the legislative history (RJN, Exs. B, C) because the facts contained in the two assembly bills are subject to dispute.  Dkt. 25 at 1.  As to the 30-day express warranty, Plaintiffs argue that MGA's request is a "thinly-veiled attempt to get 'evidence' in front of the Court on a Motion to Dismiss which is inappropriate at this stage and should be denied."  *Id.*  at 2.  They note that MGA does not "provide details which would allow the Court to determine whether [the 30-day express warranty] applied to the product at issue in this case."  *Id.* As to the assembly bills, Plaintiffs argue that MGA has "failed to offer any evidence that the documents are what they purport to be."  *Id.* They also cite the rule that courts "may take judicial notice of public filings that are matters of public record, but not facts contained within those filings that may be subject to reasonable dispute."  *Id.*

### D.   Reply

In its Reply, MGA acknowledges that as to the breach of express warranty claim, Plaintiffs have clarified that it is "based only on the '3+ warning' that is adjacent to the choking-hazard warning, not on MGA's Limited 30-Day Warranty."  *Id.* at 6.  According to MGA that claim still fails, however, because the FAC does not "make clear where this statement appeared or exactly

what it said." *Id.*  MGA rejects Plaintiffs' argument that the 30-day express warranty may be void as a matter of public policy, arguing that Plaintiffs have cited no authority in support of that position and that in any event, the argument is irrelevant.  *Id.*

MGA also challenges Plaintiffs' argument that they need not demonstrate reliance to prevail on the breach of express warranty claim "since the seller must prove its statements were not part of the bargain." *Id.* at 7.  MGA contends that even if this is an accurate statement of the law, "Sensney would still have to allege he saw or was otherwise aware of the age and choking hazard warnings" and the FAC contains no such allegations. *Id.* at 7-8 (*citing In re Toyota Rav4 Hybrid Fuel Tank Litig.*, No. 20-CV-00337-EMC, 2021 WL 1338949, at *11 (N.D. Cal. Apr. 9, 2021)).  According to MGA, Sensney *cannot* meet this requirement because he did not buy the Glamper. *Id.* at 8.

MGA argues that Plaintiffs' implied-warranty arguments ignore most of MGA's arguments. *Id.*  It asserts that their argument that privity is not required fails because Plaintiffs cite only the Song-Beverly Act in support of their position even though their implied warranty claim is not asserted under the Song-Beverly Act. *Id.*  MGA also rejects Plaintiffs' reliance on the third-party beneficiary exception, which MGA contends does not apply for the reasons stated in the Motion. *Id.*  Further, to the extent Plaintiffs rely on the argument that privity is not required if the purchaser is a close family member, MGA argues that the cases upon which Plaintiffs rely involve personal injury (which Plaintiffs have expressly disclaimed in this case) and that Plaintiffs have cited no authority for the proposition that there is an exception to the privity requirement when only economic loss has been alleged. *Id.*  MGA argues that permitting Plaintiffs to rely on this exception would amount to an expansion of the exception under California law, which should be avoided for the reasons set forth in *In re Seagate.*  *Id.* (citing *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 785–88 (N.D. Cal. 2017); *Dakin v. BMW of N. Am., LLC*, No. 3:19-cv-00818-GPC-BGS, 2019 WL 5788324, at *2 (S.D. Cal. Nov. 6, 2019)).  According to MGA, the implied warranty claim fails even if there is an exception to the privity requirement because Plaintiffs allege "only breach of the implied warranty of fitness for a particular purpose, which does not

1    apply on the facts alleged." *Id.* at 9.[6]

2         With respect to the CLRA claim, MGA reiterates its argument that such a claim can be

3    based only on a direct transaction between the plaintiff and the defendant. *Id.* at 9-11.  It also

4    rejects Plaintiffs' assertion that its CLRA and UCL claims do not sound in fraud and therefore

5    need not be pled with particularity and argues further that this heightened pleading requirement is

6    not satisfied for the reasons set forth in the Motion. *Id.* at 12-13.

7         Finally, MGA dismisses Plaintiffs' "vague argument" that it is premature to address

8    whether equitable warranties will be available, asserting that Plaintiffs must allege some facts

9    showing that remedies at law will be inadequate to redress their injury and – as to the requested

10   injunctive relief – that they face a likelihood of future harm. *Id.* at 13-14.

11   **III.    ANALYSIS**

12      **A.  Legal Standards Under Rule 12(b)(6)**

13        A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

14   for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

15   under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

16   *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

17   is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

18   sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

19   that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

20        In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

21   takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

22   non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

23   Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

24   would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

25   1990).  A complaint must "contain either direct or inferential allegations respecting all the material

26

27   _____

[6] At the motion hearing, Plaintiffs acknowledged that as currently pled, the FAC asserts only a

28   claim for breach of implied warranty for fitness for a particular purpose and not for breach of an implied warranty of merchantability.  However, they seek to amend the complaint to add a claim for breach of the implied warranty of merchantability.

United States District Court
Northern District of California

1    elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

2    *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

3    1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

4    of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5    (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion

6    couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

7    265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

8    'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

9    (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the

10   plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable

11   inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S.

12   at 570).

13          **B.    Legal Standards Under Rule 9(b)**

14          Rule 9(b) of the Federal Rules of Civil Procedure establishes a heightened pleading

15   standard for claims sounding in fraud. It provides that "[i]n alleging fraud or mistake, a party must

16   state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

17   "Rule 9(b) serves to give defendants adequate notice to allow them to defend against the charge

18   and to deter the filing of complaints 'as a pretext for the discovery of unknown wrongs,' to protect

19   professionals from the harm that comes from being subject to fraud charges, and to 'prohibit [ ]

20   plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and

21   economic costs absent some factual basis.' " *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th

22   Cir. 1996) (alterations in original).

23          The Ninth Circuit has held that in order to meet this heightened standard, "a pleading must

24   identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is

25   false or misleading about [the purportedly fraudulent] statement, and why it is false.' " *United*

26   *States ex rel. Cafasso, v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

27   (alterations in original). Courts have recognized, however, that where the alleged fraud is based

28   on an omission, a plaintiff "will not be able to specify the time, place, and specific content of an

United States District Court
Northern District of California

16

1    omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors*

2    *Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007).  Thus, "[w]here the fraud consists of

3    omissions on the part of the defendants, the plaintiff may find alternative ways to plead the

4    particular circumstances of the fraud." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D.

5    Cal. 1987) (citation omitted).

6         The heightened standard does not apply to "[m]alice, intent, knowledge, and other

7    conditions of a person's mind." Fed. R. Civ. P. 9(b). Where the alleged fraud occurred over a long

8    period of time, "Rule 9(b)'s particularity requirement is less stringently applied." *United States v.*

9    *Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006); s*ee also Hargrove & Constanzo v.*

10   *C.I.R.*, 240 F.R.D. 652, 658 (E.D. Cal. 2006).

11        **C.    Request for Judicial Notice**

12        MGA has asked the Court to take judicial notice of three documents, citing Rule 201 of the

13   Federal Rules of Evidence.   Rule 201 allows the Court to take judicial notice of facts that are "not

14   subject to reasonable dispute because [they] . . . can be accurately and readily determined from

15   sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

16        The Court GRANTS MGA's request to take judicial notice of the existence of a 30-day

17   express warranty at the web address set forth in the RJN, RJN ¶ 1 & Ex. A, but notes that judicial

18   notice of this warranty does *not* establish this warranty applies to the Glamper that is the subject of

19   Plaintiffs' claims   While courts may take judicial notice under Rule 201 of the *existence* of

20   documents found on publicly accessible websites, they may not take judicial notice that the facts

21   contained in them are true or of any additional disputed facts related to their legal significance.

22   *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (taking judicial

23   notice of existence of warranty found on publicly accessible website but noting that "its judicial

24   notice does not establish that these documents are 'valid or binding contracts.' ").

25        Had Plaintiffs relied on the 30-day express warranty in their complaint, the Court might

26   have been able to take judicial notice that the warranty attached as Exhibit A to the RJN is the one

27   that applies to the product that is at issue in this case under the doctrine of incorporation by

28   reference.  That doctrine permits district courts to consider materials outside a complaint when

United States District Court
Northern District of California

17

considering the adequacy of the pleadings under Rule 12(b)(6) or 12(c) to avoid the unfairness that may arise when plaintiffs "select[ ] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  As MGA concedes, however, Plaintiffs do not reference or rely on the 30-day express warranty in the FAC.

The Court does not reach MGA's request that it take judicial notice of the legislative history in RJN Exhibits A & B because it does not rely on those documents in deciding the Motion.

### D.   Whether Plaintiffs Fail to State a Claim

#### 1.   Breach of Express Warranty

" 'In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury.' " *Blennis v. Hewlett-Packard Co.*, No. C 07-00333 JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008) (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142 (1986)).  MGA contends Plaintiff Sensney fails to meet any of these requirements.  The Court concludes that Plaintiffs have failed to meet the first requirement and does not reach MGA's remaining arguments.

To adequately allege the exact terms of an express warranty, "a plaintiff must identify a 'specific and unequivocal written statement,' *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997), 'relating to the title, character, quality, identity, or condition of the sold goods,' *In re Sony PS3 Other OS Litig.*, 551 Fed. App'x 916, 919 (9th Cir. 2014)." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020).  Here, the FAC alleges that "MGA warranted that the Glamper was appropriate for ages 3+[,]" FAC ¶¶ 8, 55, 69, 78, but does not provide the specific terms of that warranty or where it is found.  This defect alone renders the claim insufficient as it fails to provide MGA sufficient notice of the basis for the claim.  A vague reference in Plaintiffs' Opposition to a warranty that may have arisen based on "advertised pictures of the Glamper in full expansion[,]" Opposition at 15, raises further questions as the FAC contains no allegations about any specific Glamper advertisements.

1    Because the exact terms of the alleged express warranty are unclear and the FAC does not

2    include allegations as to *where* the express warranty was printed, the Court declines to reach

3    MGA's argument that Plaintiff Sensney was not aware of the express warranty (and thus could not

4    have relied on it) and that the warranty was not breached because it related only to choking

5    hazards and not other dangers.  The Court dismisses this claim with leave to amend.

6              **2.  Breach of Implied Warranty**

7    MGA argues that Plaintiff Sensney's claim for breach of implied warranty fails because

8    there is no privity between Sensney and MGA, no exception to the privity requirement applies,

9    and in any event, Sensney has not alleged any warranty as to a "particular purpose" that was

10   breached.

11   "Privity of contract is a prerequisite in California for recovery on a theory of breach of

12   implied warranties of fitness and merchantability."  *Blanco v. Baxter Healthcare Corp.*, 158 Cal.

13   App. 4th 1039, 1058 (2008).   Plaintiffs cite Cal. Civ. Code section 1792, a provision of the Song-

14   Beverly Act, in support of their assertion that privity is not required but that argument fails as they

15   do not assert the breach of implied warranty claim under the Song-Beverly Act.  *See Ehrlich v.*

16   *BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) (finding that while a breach of

17   implied warranty claim under California Commercial Code section 2314 requires privity, a breach

18   of warranty claim under the Song-Beverly Act does not require privity).

19   Even if privity is a requirement of his implied warranty claim, Sensney contends, an

20   exception applies when a close family member is in privity with the defendant.  He relies on

21   *Hauter v. Zogarts*, in which the court found that a claim for breach of implied warranty could be

22   brought by a plaintiff who was seriously injured by a product that was purchased for him by his

23   mother.  14 Cal. 3d 104, 108 (1975).  In *Hauter*, the court explained that "[a]lthough privity

24   appears to remain a requirement for actions based upon the implied warranty of merchantability . .

25   . Fred Hauter comes within a well-recognized exception to the rule: he is a member of the

26   purchaser's family."  *Id.*  at 114 n. 8. Likewise, in *Duross v. Home Depot U.S.A., Inc*., the court

27   recognized that there is a "well-established exception to the [privity] rule for members of a

28   purchaser's family" under California law and held that a plaintiff who was injured by a product

19

1   that was purchased by his sister-in-law could assert an implied warranty claim even though he was

2   not in privity with the seller.  No. CV2177006SJOJPRX, 2018 WL 5917861, at *7 (C.D. Cal.

3   Aug. 21, 2018).   The court pointed to the comments to California UCC section 2318 "noting the

4   breadth of California's consumer protection regime and rejecting a provision that would limit

5   privity to only members of a purchaser's family or household as 'a much more restrictive law of

6   privity of contract than [exists] in California.' "  *Id.*

7        The undersigned concludes that because Plaintiff Sensney asserts his breach of implied

8   warranty claim based on a defective product that was purchased by his mother-in-law, the privity

9   exception for family members applies here.  Although MGA argues that the Court should not

10   apply this exception because the plaintiff in this case – in contrast to the plaintiffs in *Hauter* and

11   *Duross*—suffered only economic loss and no injury, the Court finds no basis in the case law for

12   imposing such a limitation on the family exception.  MGA's reliance on *Dakin v. BMW of N. Am.,*

13   *LLC*, is not persuasive.  In that case, the court did not draw a distinction between implied warranty

14   claims based on economic loss only and those involving personal injury, as MGA suggests, even

15   though it is true that the plaintiff in that case only experienced economic loss.  Rather, the court

16   relied solely on its reading of *Hauter* to conclude that where the plaintiff had purchased an

17   allegedly defective automobile from his mother, no exception to the privity requirement applied.

18   No. 319CV00818GPCBGS, 2019 WL 5788324, at *2 (S.D. Cal. Nov. 6, 2019).  The court appears

19   to have misread *Hauter*, however, stating that "the *Hauter* court did not recognize a privity

20   exception for actions based upon the implied warranty of merchantability. *Id*. Instead, it observed

21   that privity was not required for a purchaser's family member in an action based upon an express

22   warranty." *Id.*   In fact, in *Hauter*, the plaintiff brought claims for both breach of express and

23   implied warranties, and the court found that the defendant had breached both.  *Id.* at 108, 114.

24   Moreover, the court stated while the express warranty claim did not require privity, the implied

25   warranty claim *did*.  *Id.* at 114 n. 8.  In particular, the court stated: "Although privity appears to

26   remain a requirement for actions based upon the implied warranty of merchantability . . . Fred

27   Hauter comes within a well-recognized exception to the rule: he is a member of the purchaser's

28   family."  *Id.*   Therefore, the undersigned respectfully disagrees with the court's conclusion in

United States District Court
Northern District of California

20

*Dakin* that recognizing an exception to the privity requirement for family members would impermissibly "recognize a new exception on the basis of family membership to the noted 'tight vertical privity requirement' under California law." *Id.*

MGA also relies on the conclusion of this Court that under the Ninth Circuit's decision in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008), California law does not create an exception to the privity requirement permitting  users of a product to bring claims for breach of implied warranties against a manufacturer rather than the retailer who sold them the product on the basis that they are implied beneficiaries of distribution contracts between manufacturers and retailers.  *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017).  MGA argues that the same reasoning applies to the exception for family members but ignores the fact that that is a separate exception that has been expressly recognized by the California Supreme Court in *Hauter*, as discussed above.  Because the Court finds that the family exception applies, it does not reach Plaintiffs' additional argument that the third-party beneficiary exception also applies.

Nonetheless, the Court finds that Plaintiff Sensney has not stated a claim for breach of implied warranty of fitness for a particular purpose, which is the only implied warranty alleged to have been breached in the FAC.  *See* FAC ¶¶ 65-75. "Under UCC § 2–315, an implied warranty of fitness for a particular purpose exists if at the time of contracting the seller knows or has reason to know that the buyer is relying on the seller's skill or judgment to select or to furnish suitable goods for certain purpose."  *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *7 (N.D. Cal. June 5, 2009) (citing *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.App.4th 1291, 1295 n. 2 (1995)).   In contrast, an implied warranty of merchantability is an implied warranty by the seller that a product is "fit for the ordinary purposes for which such goods are used." *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th at 1295.  An essential element of a claim for breach of implied warranty of fitness for a particular purpose is that a plaintiff "intended to use the [product] for a 'particular purpose,' *i.e.*, a use different from the ordinary purpose of [the product]."  *Houghtailing v. Crown Equip. Corp.*, No. 11-CV-05040-TEH, 2015 WL 1090386, at *3 (N.D. Cal. Mar. 12, 2015) (citing *Am. Suzuki Motor Corp.*,  37

United States District Court
Northern District of California

Cal. App. 4th at 1295 n. 2). Here, however, Plaintiff Sensney has alleged only that the Glamper was purchased for use as a child's toy, which is the ordinary purpose of this product. Therefore, the breach of implied warranty claim alleged in the FAC fails to state a claim.

The Court notes that in their Opposition, Plaintiffs refer in passing to this claim as a claim for breach of the implied warranty of merchantability. *See* Opposition at 5. To state a claim for breach of the implied warranty of merchantability, Plaintiffs must allege facts establishing "a fundamental defect that renders the product unfit for its ordinary purpose." *Stearns v. Select Comfort Retail Corp*., No. 08–2746 JF, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (citing *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.App.4th at 1295)). While MGA contends Plaintiffs will be unable to allege facts to meet that standard, the Court concludes that it is premature to decide that question and will permit Plaintiffs to amend their complaint to assert such a claim.

### 3. CLRA and UCL Claims

a. Whether the elements of Plaintiffs' CLRA and UCL claims are sufficiently alleged

MGA argues that Plaintiffs' claims under the CLRA and the UCL fail to state a claim because they have not alleged reliance, which is a required element of both claims because they sound in fraud. They further assert that these claims are subject to Rule 9(b)'s heightened pleading standard and that Plaintiffs have failed to meet that standard in pleading that MGA misrepresented the Glamper or failed to disclose material information about it. The Court concludes that both the UCL and CLRA claim fail because they sound in fraud and Plaintiffs have not alleged any specific facts showing reliance.

"When CLRA . . . and UCL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue." *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *6 (N.D. Cal. June 30, 2020) (quoting *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009)). "This rule applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions." *Id.* (citing *Williamson v. Reinalt-Thomas Corp*., 2012 WL 1438812, at *13 (N.D. Cal. Apr. 25, 2012)).

United States District Court
Northern District of California

1   In *Kearns*, the plaintiffs asserted claims under the CLRA and UCL based on allegations

2   that the defendant's sales representatives and marketing materials misrepresented, or failed to

3   disclose material information regarding, the safety of its products.  567 F.3d at 1125-1126.  The

4   Ninth Circuit held that the plaintiff's claims were grounded in fraud and therefore the CLRA and

5   UCL claims had to satisfy the heightened pleading requirements of Rule 9(b). *Id*. at 1124-27.

6   Here, as in *Kearns*, the gravamen of Plaintiffs' UCL and CLRA claims is that MGA

7   misrepresented or concealed material information about the safety of its product for children and

8   that Plaintiffs relied on those misrepresentations or omissions. *See, e.g.*, FAC ¶¶ 87 ("Defendant's

9   representations and/or concealments are false, misleading, and/or deceptive acts");  107

10   ("Defendant falsely represented and/or concealed material facts regarding Glampers"); 94

11   ("Defendant falsely represented and/or concealed material facts regarding Glampers, information

12   that is relied upon by consumers, including Plaintiffs and Class members, in making purchasing

13   decisions"); 95 ("Defendant's statements or omissions regarding the Glampers materially and

14   adversely affected the purchasing decisions of Plaintiff and Class members. Had Plaintiffs and

15   Class members known of the danger of these products, they would not have purchased them."); 96

16   ("Defendant's affirmative misrepresentations and material omissions and their publication of these

17   material inaccuracies regarding the Glampers constitute unfair, deceptive, and misleading business

18   practices in violation of California Civil Code § 1770(a)."); 104 ("Defendant has engaged in

19   unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Defendant has

20   engaged in unfair, deceptive, untrue, or misleading advertising in violation of the UCL"); 110

21   ("Defendant's affirmative misrepresentations and material omissions and their publication of these

22   material inaccuracies regarding the Glamper constitute unfair, deceptive, and misleading business

23   practices.").  Therefore, the Court concludes that Plaintiffs' UCL and CLRA claims sound in fraud

24   and must be pled with particularity.

25   Further, because Plaintiffs' claims under the UCL and the CLRA sound in fraud, they must

26   allege specific facts showing that they relied on the alleged misrepresentations or omissions.

27   *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 326–27 (2011) ("Recognizing that 'reliance is the

28   causal mechanism of fraud' (*In re Tobacco II Cases*, at p. 326, 93 Cal.Rptr.3d 559, 207 P.3d 20),

23

we held that a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.' "); *Shaeffer v. Califia Farms*, LLC, 44 Cal. App. 5th 1125, 1143 (2020) ("[A] plaintiff has standing to sue under the Unfair Competition Law, the false advertising law and the CLRA only if she 'actual[ly] reli[ed]' on whatever defect in a product label allegedly makes it actionable when making her decision to buy the product") (quoting *Kwikset*, 51 Cal.4th at 317, 326-327). The reliance requirement applies not only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted under the "unlawful" and "unfair" prongs where those claims are predicated on misrepresentation and deception. *Michel v. United States*, No. 16CV277-GPC(AGS), 2017 WL 4922831, at *18 (S.D. Cal. Oct. 31, 2017) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *Kwikset Corp*., 51 Cal. 4th at 326).

To plead reliance, a plaintiff "must 'truthfully allege' that 'she would not have bought the product but for the allegedly actionable misrepresentation or omission.' " *Shaeffer*, 44 Cal. App. 5th at 1143 (quoting *Kwikset*, 51 Cal. 4th at 317)); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) (observing that in the case of an omission, reliance can be established by "proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently."). Plaintiffs contend they have adequately pled reliance, arguing in their Opposition that they "allege that Defendant's omissions, i.e. its failure to warn that a user's finger could get caught in the very button required to operate the toy and reveal all its hidden features, prevented Plaintiffs from making a fully informed decision about whether to purchase the Glamper and "had they in fact known of the dangerousness of the product, they would not have bought the Glamper in the first place." Opposition at 9 (citing FAC ¶¶ 8 ("MGA warranted that the Glamper was appropriate for ages 3+") 115 ("Defendant's conduct,  misrepresentations, and omissions have prevented Plaintiff and class members from making fully informed decisions about whether to purchase the Glamper and had they in fact known of the dangerousness of the product, they would not have bought the Glamper in the first place, instead using their hard earned money to purchase toys fit for use by their children")). Given that neither Sensney nor Watkins is alleged to have

24

ever bought a Glamper, however, this argument presumes that a plaintiff can satisfy the UCL and CLRA's reliance requirement by alleging that a family member, and not the plaintiff, relied on the alleged misrepresentations or omissions when they purchased the product.  Plaintiffs have not pointed to any authority that under California law, the family member exception applies to claims asserted under the UCL and the CLRA.  Indeed, as discussed below, California courts appear to have reached the opposite conclusion, at least as to CLRA claims.  Therefore, the Court rejects this argument.

The Court further concludes that Plaintiffs have not alleged with particularity the misrepresentations and omissions that are the basis for its UCL and CLRA claims.  If further concludes that MGA is correct that they did not allege specific facts showing that MGA owed a duty of disclosure to them – an argument Plaintiffs did not respond to in their Opposition.  *See* Motion at 13-15. Therefore, the Court concludes Plaintiffs have failed to state a claim under the UCL or the CLRA and does not reach MGA's remaining challenges to these claims.

> b.  Whether the CLRA claim fails because there was no direct transaction between Plaintiffs and MGA

Under the CLRA, certain "unfair methods of competition and unfair or deceptive acts or practices undertaken . . . in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful."  Cal. Civ. Code § 1770(a). These include "[r]epresenting that goods . . . have . . . characteristics . . . that they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . ."  Cal. Civ. Code §§ 1770(a)(5), (7).  The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

The CLRA defines "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).  Based on that definition, California courts have held that only the individual who actually purchased the product may assert a claim under the CLRA based on the sale of that

product. *Schauer v. Mandarin Gems of Cal., Inc*., 125 Cal. App. 4th 949, 960 (2005) (holding that plaintiff did not have standing to assert CLRA claim based on allegedly deceptive practices in connection with purchase of her engagement ring because the plaintiff's fiancé and not the plaintiff purchased the ring and therefore she was not a "consumer" under the CLRA); *Vega v. CarMax Auto Superstores Cal., LLC*, No. B278249, 2018 WL 3216347, at *1–3 (Cal. Ct. App. July 2, 2018) (under *Schauer*, plaintiff could not assert CLRA claim based on car purchased for him by his mother); *Thayer v. Benjamin Franklin Plumbing*, No. A129201, 2011 WL 5056277, at *5 (Cal. Ct. App. Oct. 25, 2011) (under *Schauer*, plaintiff could not assert CLRA claim against plumber who installed water heater because contract to install the water heater was between the plumber and her husband); *Morris v. Farmers Ins. Exch*., No. B188081, 2006 WL 3823522, at *1 (Cal. Ct. App. Dec. 28, 2006) (plaintiff who purchased car from third party could not assert a CLRA claim against previous owner's insurance company that allegedly conspired to violate CLRA by issuance of salvage title that it knew would result in misrepresentations to future owners about condition of the car).[7] Because neither Sensney nor Watkins purchased the Glamper, they are not "consumers" under the CLRA and therefore, this claim is barred.

Plaintiffs' reliance on *Chamberlan v. Ford Motor Co*., No. 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) in support of their assertion that they can bring a CLRA claim even though they did not purchase the Glamper is unpersuasive. In *Chamberlan*, the court pointed to the phrase in section 1770(a) "a transaction intended to result or which results in," which was added to the provision before the bill was passed, in support of the conclusion that "the legislature expanded the range of illegal acts and practices to include those 'undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any

---

[7] Plaintiffs object that the cases that have followed *Schauer* cited above are unpublished. The Court concludes that it may consider these cases in determining how to interpret California law, however. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1297, n. 3 (N.D. Cal. 2018) (pointing to "the long line of authority permitting consideration of unpublished state court decisions as indicative of the proper understanding of state law") (citing *Daniel v. Ford Motor Co*., 806 F.3d 1217, 1223 n.3 (9th Cir. 2015); *Roberts v. McAfee, Inc*., 660 F.3d 1156, 1169 n.6 (9th Cir. 2011); *Emp'rs Ins. of Wausau*, 330 F.3d at 1220 n.8; *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997); *McSherry v. Block*, 880 F.2d 1049, 1053 n.2 (9th Cir. 1989)).

1    consumer.' " 2003 WL 25751413, at *7.   The court noted further that "[n]othing in the language

2    of the CLRA states that only a defendant who directly engaged in a completed transaction with a

3    plaintiff may be liable to that plaintiff." *Id.* The court concluded, "[v]iewed in light of the

4    provision to construe the statute liberally, the broad language of the statute suggests that the

5    legislature intended the CLRA to cover a wide range of business activities." *Id.* It went on to hold

6    that plaintiffs who purchased used cars from authorized dealers could assert claims against the

7    manufacturer based on alleged concealment of defects that it was aware of when it originally sold

8    the cars. *Id.* at *8.

9         A number of federal district courts have cited *Chamberlan* in support of the proposition

10   that a CLRA claim may be asserted against a manufacturer even though the plaintiff did not

11   purchase the product directly from the manufacturer but instead, purchased it from a retailer. *See,*

12   *e.g., Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) (plaintiff could assert

13   CLRA claim against Whirlpool based on purchase of Whirlpool appliance at Sears); *In re Sony*

14   *Vaio Computer Notebook Trackpad Litig.*, No. 09CV2109 BEN RBB, 2010 WL 4262191, at *5

15   (S.D. Cal. Oct. 28, 2010);  *Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125, 2013 WL 5781673, at

16   *10 (E.D. Cal. Oct. 25, 2013) (holding that purchasers of refrigerator could assert CLRA claims

17   against manufacturer based on alleged defect even though they purchased the refrigerators from

18   third party vendors).   Some have read *Chamberlan* to be limited to the scenario in that case,

19   where the third party from whom the plaintiff purchased the product was an agent of the

20   manufacturer.  *See, e.g., Fulford v. Logitech, Inc.*, No. C-08-2041 MMC, 2008 WL 4914416, at *1

21   (N.D. Cal. Nov. 14, 2008) (distinguishing *Chamberlan* on the basis that in that case, there was a

22   transaction with an agent of the defendant even if the transaction was not directly with the

23   defendant);  *Green v. Canidae Corp.*, No. CV 09-0486-GAF, 2009 WL 9421226, at *4 (C.D. Cal.

24   June 9, 2009) (same).[8]

8 In *Green*, the court both distinguished *Chamberlan* and also rejected its holding, explaining its
conclusion as follows:

  [T]he Court declines to adopt the reasoning of *Chamberlan v. Ford Motor Co.*, No. C 03–2628
  CW, 2003 WL 25751413, *7–8 (N.D.Cal. Aug.6, 2003), in which the district court held
  plaintiffs could bring a CLRA claim against Ford, despite the fact that they purchased their car

1    None of these cases, however, involves the scenario alleged here, where Plaintiffs seek to

2  assert a CLRA claim as "consumers" having never purchased the product at all.  On the other

3  hand, California courts addressed just that situation in *Schauer*, which has been followed in a

4  number of California cases.  Those cases indicate that California courts would not extend

5  *Chamberlan* to the facts here and that Plaintiffs do not have standing to assert a claim under the

6  CLRA because the allegations in the FAC establish that they are not "consumers" and did not

7  engage in any "transaction" with MGA in connection with the Glamper.  Therefore, Plaintiffs fail

8  to state a claim under the CLRA and that claim is dismissed with prejudice.

9                    **4.  Equitable Relief**

10    MGA contends that under the Ninth Circuit's recent decision in *Sonner v. Premier*

11  *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), Plaintiffs' equitable-relief claim requires them

12  to plead facts that, if proven, would show legal remedies would be inadequate; that their request

13  for prospective injunctive relief requires allegation of facts showing Plaintiffs or their daughters

14  are likely to be harmed in the future; and that Plaintiffs must comply with pleading requirements

15  as to each alternative remedy sought.   The Court agrees.

16    In *Sonner*, the court addressed whether a plaintiff who sought restitution under the UCL

17  and CLRA was required to comply with the federal common law requirement that she demonstrate

18  the lack of an adequate legal remedy at law to obtain this equitable remedy even though that

19  requirement had been abrogated (or so the plaintiff argued) by the California legislature as to UCL

20  and CLRA claims.  971 F.3d at 839.  The court conducted an extensive *Erie* analysis and

21  concluded that "a federal court must apply traditional equitable principles before awarding

22  restitution under the UCL and CLRA," citing the "fundamental principle  . . . that state law cannot

23

24    from a used car dealer and not from the car manufacturer itself. The Court is not persuaded by
the *Chamberlan* court's interpretation of the CLRA's "intended to result" language as

25  extending the statute's application to transactions that do not directly involve a consumer. The
implication of that court's holding is to apply the CLRA to all vendor transactions as long as

26  they are present somewhere in the chain of sale of a consumer good. The CLRA does not

27  contemplate that result.

28  2009 WL 9421226, at *4.   The Court need not reach whether *Chamberlan* was correctly decided
because neither *Chamberlan* nor the cases that followed it, discussed above, are on point.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    expand or limit a federal court's equitable authority." *Id.* at 841.  While in *Sonner* this issue arose

2    at a late stage of the case, numerous courts in the wake of that decision have concluded that its

3    reasoning applies at the pleading stage as well.  *See, e.g. Clark v. Am. Honda Motor Co*., No.

4    CV2003147ABMRWX, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) (holding that

5    equitable claims based on UCL and CLRA failed under *Sonner* because the plaintiff sought

6    damages and did not allege that they lacked an adequate remedy at law and further concluding that

7    the reasoning in *Sonner*  applies not only to claims for restitution but also to injunctive relief);

8    *Gibson v. Jaguar Land Rover N. Am*., LLC, No. CV2000769CJCGJSX, 2020 WL 5492990, at *3

9    (C.D. Cal. Sept. 9, 2020) (dismissing UCL claims for an injunction and restitution on the basis that

10   *Sonner* "very recently made clear" that the requirement that plaintiff establish an inadequate

11   remedy at law "applies to claims for equitable relief under both the UCL and CLRA"); *Teresa*

12   *Adams v. Cole Haan, LLC*, No. SACV20913JVSDFMX, 2020 WL 5648605, at *2 (C.D. Cal.

13   Sept. 3, 2020) ("The *Sonner* court derived its rule from broader principles of federal common law .

14   . . [and] this broad analysis of the distinction between law and equity [does not] create an

15   exception for injunctions as opposed to other forms of equitable relief. The clear rule in *Sonner*

16   that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief

17   therefore applies."); *Schertz v. Ford Motor Co*., No. CV2003221TJHPVCX, 2020 WL 5919731, at

18   *2 (C.D. Cal. July 27, 2020) (dismissing claims for an injunction and restitution under the UCL

19   because plaintiff failed to allege the lack of an adequate legal remedy as required under *Sonner*);

20   *In re MacBook Keyboard Litig*., 2020 WL 6047253, at *3 (dismissing claims for injunctive relief

21   based on *Sonner*).

22          Plaintiffs did not address *Sonner* in their opposition and advanced only conclusory

23   arguments based on pre-*Sonner* cases that it is premature to address this issue and that alternative

24   pleading is permitted.  Yet Plaintiffs have not alleged any facts establishing that their remedies at

25   law are inadequate.  Nor have they alleged any facts establishing that they are likely to face any

26   future danger from the alleged defect, which they expressly allege has now been fixed.

27   Consequently, the Court concludes that Plaintiffs' claims for equitable relief under the UCL and

28   the CLRA fail as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED.  The Court dismisses all of Plaintiffs' claims on the basis that they are insufficiently pled.  Plaintiffs are granted leave to amend as to all of their claims except the CLRA claim, which cannot be cured by amendment. Their amended complaint shall be filed by **August 27, 2021**.

**IT IS SO ORDERED.**

Dated:  July 26, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge