1

Frank Kelly, SBN 83473
fkelly@shb.com

2

Amir Nassihi, SBN 235936
anassihi@shb.com

3

M. Kevin Underhill, SBN 208211
kunderhill@shb.com

4

SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300

5

San Francisco, CA 94105
Tel:  415.544.1900

6

Fax: 415.391.0281

7

Attorneys for Defendant
MGA ENTERTAINMENT, INC.

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

ROBIN WATKINS and ADAM SENSNEY,
on behalf of themselves and all others
similarly situated,

Case No. 3:21-cv-00617-JCS

12

**DEFENDANT MGA ENTERTAINMENT,
INC.'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

13

Plaintiffs,

14

v.

Date:      Oct. 15, 2021
Time:     9:30 a.m.
Court:    Courtroom F – 15th Floor
Judge:    Hon. Joseph C. Spero

15

MGA ENTERTAINMENT, INC. a California
corporation,

16

Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTS ALLEGED............................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.   The implied-warranty cause of action fails for lack of vertical privity and because
     Sensney does not allege facts showing the Glamper was unmerchantable. ...................... 5

     A.   Sensney does not allege vertical privity, a required element of the claim.............. 6

     B.   Sensney does not allege facts showing the Glamper was unmerchantable. ........... 9

II.  The express-warranty cause of action fails for multiple reasons, including Sensney's
     continued failure to allege the exact terms of a warranty. .................................................. 12

     A.   Sensney still does not plead the warranty's exact terms..................................... 12

     B.   Sensney has not pleaded facts showing the alleged warranty was "part of the
          basis of the bargain." He did not make any bargain. ............................................ 15

III. Sensney does not allege that any breach caused him an injury. ...................................... 17

CONCLUSION................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aaronson v. Vital Pharm., Inc.*,
   No. 09-CV-1333 W (CAB), 2012 WL 12844724 (S.D. Cal. Feb. 3, 2012) ..................................17

*Albers v. Unilever United States, Inc.*,
   No. CV 12-7160-DSF, 2013 WL 12138686 (C.D. Cal. Feb. 28, 2013) ........................................14

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995) ......................................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................................5

*Azoulai v. BMW of N. Am. LLC*,
   No. 16-cv-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ..................................11, 12

*Baird v. Samsung Elec. Am., Inc.*,
   No. 4:17-cv-06407-JSW, 2021 WL 1799432 (N.D. Cal. Jan. 26, 2021).......................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................................5

*Bhatt v. Mercedes-Benz USA, LLC*,
   No. CV 16-03171-TJH-RAOx, 2018 WL 5094932 (C.D. Cal. Apr. 16, 2018)............................7

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...........................................................................................9, 10, 11

*Burr v. Sherwin Williams Co.*,
   42 Cal. 2d 682 (1954) ...............................................................................................................6, 16

*Chavez v. Glock, Inc.*,
   207 Cal. App. 4th 1283 (2012) .......................................................................................................6

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...............................................................................................6, 7, 8

*Coleman v. Boston Sci. Corp.*,
   No. 1:10-cv-01968-OWW, 2011 WL 3813173 (E.D. Cal. Aug. 29, 2011)............................16, 17

*Corbett v. Pharmacare U.S., Inc.*,
   No. 21-cv-137-GPC-AGS, 2021 WL 2473950 (S.D. Cal. June 17, 2021).....................................9

*Duross v. Home Depot U.S.A., Inc.*,
   No. CV 21-77006-JOJ-PRX, 2018 WL 5917861 (C.D. Cal. Aug. 21, 2018) ...............................7

*Elsayed v. Maserati N. Am., Inc.*,
   215 F. Supp. 3d 949, 958–61 (C.D. Cal. 2016) ............................................................................14

*Ferry v. Mead Johnson & Co., LLC*,
    514 F. Supp. 3d 418, 445 (D. Conn. 2021) ...................................................................................15

*Finn. v. G.D. Searle & Co.*,
    35 Cal. 3d 691 (1984) ...................................................................................................................15

*Grossman v. Schell & Kampeter, Inc.*,
    No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019) ..............................7

*Gutierrez v. Carmax Auto Superstores Cal.*,
    19 Cal. App. 5th 1234 (2018) .......................................................................................................10

*Hauck v. Advanced Micro Devices, Inc.*,
    816 F. App'x 39 (9th Cir. 2020) ...................................................................................................13

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ................................................................................................7, 12, 13, 16

*In re 100% Grated Parmesan Cheese Mktg. and Sales Prac. Litig.*,
    393 F. Supp. 3d 745 (N.D. Ill. 2019) ...........................................................................................17

*In re Seagate Tech. LLC Litig.*,
    233 F. Supp. 3d 776 (N.D. Cal. 2017) ...................................................................................7, 8, 9

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) .................................................................................................13

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) .................................................................................................17

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (1985) ....................................................................................................13, 16

*Klaehn v. Cali Bamboo, LLC*,
    No. 19-cv-1498-TWR-KSC, 2021 WL 3044166 (S.D. Cal. June 14, 2021) ...................................8

*Lassen v. Nissan N. Am., Inc.*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) .......................................................................................11

*Loomis v. Slendertone Distribution, Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. Nov. 6, 2019) ............................................................................9

*Mandani v. Volkswagen Group of Am., Inc.*,
    No. 17-cv-07287-HSG, 2019 WL 652867 ....................................................................................9

*Maneely v. Gen. Motors Corp.*,
    108 F.3d 1176 (9th Cir. 1997) ..........................................................................................12, 14, 15

*McCarthy v. Toyota Motor Corp.*,
    No. 8:18-cv-00201-JLS, 2019 WL 3220579 (C.D. Cal. Apr. 9, 2019) .........................................17

*McGee v. Mercedes-Benz USA, LLC*,
    No. 19-cv-513-MMA-WVG, 2020 WL 1530921 (S.D. Cal. Mar. 30, 2020) ...............................10

*Morris v. Adolph Coors Co.*,
    735 S.W.2d 578 (Tex. Ct. App. 1987) ...............................................................................................15

*Obertman v. Electrolux Home Care Prods., Inc.*,
    482 F. Supp. 3d 1017 (E.D. Cal. Aug. 31, 2020) ...............................................................................9

*Park-Kim v. Daikin Indus., Ltd.*,
    No. 2:15-cv-09523-CAS-KKx, 2016 WL 6744764 (C.D. Cal. 2016) ...........................................17

*Penikila v. Sergeant's Pet Care Products, LLC*,
    442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) ...............................................................................13

*Shay v. Apple Inc.*,
    No. 20-cv-1629-GPC-BLM, 2021 WL 1733385 (S.D. Cal. May 3, 2021) ......................................6

*Sherman v. Sunsong Am., Inc.*,
    485 F. Supp. 2d 1070 (D. Neb. 2007) .............................................................................................15

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361-PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...............................................14

*Tapia v. Davol, Inc.*,
    116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...........................................................................................17

*Taragan v. Nissan N. Am., Inc.*,
    No. C 09-3660-SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) .............................................11

*Watkins v. MGA Entertainment, Inc.*,
    No. 21-CV-00617-JCS, 2021 WL 3141218 .............................................................................. *passim*

*Watson v. Solid Gold Pet, LLC*,
    No. CV 18-6479-PSG-SSx, 2019 WL 3308766 (C.D. Cal. Feb. 22, 2019) ....................................9

*Weinstat v. Dentsply Internat'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) .......................................................................................................16

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986) ..........................................................................................................12

**Statutes**

Cal. Comm. Code § 2313 ........................................................................................................12, 16

Cal. Comm. Code § 2314 ...........................................................................................................7, 9

Cal. Comm. Code § 2318 ...............................................................................................................6

Cal. Comm. Code § 2607 .............................................................................................................12

# INTRODUCTION

This is the third effort to plead claims alleging that a toy vehicle is "defective" because a child may be able to get her finger stuck in a hole. At the hearing on MGA's previous motion, Plaintiffs admitted they had no viable negligence claim, and this Court later held, among other things, that they had not alleged the facts necessary to support a UCL or CLRA claim. The Court also held Plaintiffs were not "consumers" entitled to bring a CLRA claim because they did not buy the product. The Court also dismissed both warranty claims, granting leave to amend.

The Second Amended Complaint asserts only claims for breach of the implied warranty of merchantability and breach of express warranty. And now the only class representative is Adam Sensney; Robin Watkins is no longer a party, even though the SAC is still based on the same allegations about *her* daughter's use of the toy. Mr. Sensney—who did not buy the product, and whose daughter was not injured—alleges that his daughter received the toy as a Christmas gift but now can no longer play with it, because he took it away from her after hearing about the abrasions to Ms. Watkins' daughter's finger. The Court should dismiss the remaining claims.

First, the implied-warranty claim fails because the SAC concedes there is no privity. This Court previously held that the "family member" exception to privity applies. That solves Sensney's horizontal-privity problem, because it allows him to assert what would otherwise be his mother-in-law's claim. But it does not solve his *vertical*-privity problem, because his mother-in-law bought the product from an unidentified online retailer, not from MGA. The lack of vertical privity defeats the claim. It would also fail simply because Sensney has not alleged facts showing that the Glamper is unfit for its ordinary purpose and therefore "unmerchantable." He does little more than assert that the Glamper is "unsafe" because of a small risk of minor injury. If these allegations were sufficient, few products would be merchantable. The Court should dismiss both claims with prejudice.

Second, the express-warranty claim fails because Sensney has again failed to plead the exact terms of an express warranty, and certainly not the sort of broad warranty promise he claims MGA made. He also has not pleaded (and cannot plead) reliance or privity, at least one of which is required. He cannot show a warranty became "part of the basis of his bargain" when he did not make any bargain. For those reasons as well, the Court should dismiss the SAC with prejudice.

**FACTS ALLEGED**

The Glamper resembles a recreational vehicle but can expand to reveal features like a fashion runway, DJ booth, and dressing room. Second Am. Compl. ¶¶ 1–2. To expand the Glamper, a user must push a button located underneath it, which unlatches the front cab portion of the RV so it can be pulled out and away from the rest of the toy. *Id*. ¶ 4. The SAC again alleges this mechanism is defectively designed because it "allows a user's finger to become trapped between the depressed button and the hole into the bottom of the Glamper. When a user tries to pull their entrapped finger out, it only serves to narrow the exposed hole and tighten the entrapped finger further." *Id*. ¶ 23. In fact, the SAC itself admits that if someone does manage to get a finger stuck, they can remove it by pushing down further on the button to create more space. *See id.* ¶ 5 n.1 (citing videos including "Glamper—FINGER STUCK—here's how the mechanism works and how we got it out," *https://www.youtube.com/watch?v=FKb6fGcD-sA* (posted Dec. 14, 2019; last visited Aug. 30, 2021) (telling users to "stay calm" and have the child push down). But according to the SAC, it "took seven firefighters 30 minutes" to free Ms. Watkins' daughter's finger from a Glamper. *Id*. ¶ 24.[1] The SAC alleges that this shows the Glamper has a dangerous "design defect." *Id*. ¶ 41.

Apart from the absence of the claims that have been dropped, the SAC is virtually identical to the previous complaint. Oddly, it still includes the tale previously told by Robin Watkins, although Watkins is no longer telling it. *Compare* FAC ¶¶ 18–29 *with* SAC ¶¶ 17–26. All the dramatic events of the tale, however, still involve her daughter, now billed as "Plaintiff's daughter's friend." FAC ¶ 18; SAC ¶ 17. Adam Sensney, once little more than another plaintiff's daughter's friend's father, is now the sole named plaintiff. But the story itself has not changed.

Watkins' child, R.C., "received the Glamper as a Christmas present in 2019." SAC ¶ 17. (She received it from Watkins' mother. FAC ¶ 18.) Watkins' husband (R.C.'s father) assembled the Glamper on Christmas Day, and all was well for the next month and a half. SAC ¶¶ 19–20. On February 10, 2020, Watkins allegedly heard her daughter screaming and found that she had managed

---

[1] The SAC shows Sensney is at best exaggerating. It includes a picture showing five firefighters, one of whom is cutting into the Glamper with scissors or shears. SAC ¶ 24. It is not clear what the others are doing. Three might be holding onto the Glamper while one cuts, but the last of the five is just standing nearby. Like the FAC, the SAC contains no facts making it plausible that it took even *one* trained firefighter to do what is shown, much less that it took seven of them half an hour.

MGA'S MOTION TO DISMISS SAC
Case No. 3:21-cv-00617-JCS

to get her thumb stuck in the Glamper's release mechanism. *Id.* ¶¶ 20–21. The SAC again includes an image of an allegedly "similar scene," although instead of showing a child with her thumb trapped in the button, it shows an adult with an index finger *not* trapped in the button. *Id.* at ¶ 22. The image does help illustrate how a finger or thumb, if one did become "trapped," could be released by simply pushing down on the button, the same advice given in one of the YouTube videos cited in the SAC. *Id.* ¶ 5 n.1. Instead of trying this, apparently, Watkins took R.C. to a local fire station in order to ask firefighters to cut the Glamper apart and free her child. *Id.*

The SAC still does not allege that R.C. suffered an injury beyond some temporary discomfort. Yet Watkins contacted MGA that same day to tell her story, demanding an immediate response. SAC ¶ 25. After a follow-up email, an MGA representative contacted her to discuss the matter. *Id.* ¶ 26. As Watkins previously admitted, the company shipped her 15 free dolls in response to her demands, though she scorned this as a gratuitous "attempt to appease" her. FAC ¶ 28. Watkins also admitted she had already been reimbursed for the Glamper, which she did not buy to begin with—likely explaining why she no longer purports to be a class representative. *Id.* ¶ 29.

The only purported representative is now Mr. Sensney, though neither he nor his daughter (or any other family member) was involved in any of the events above. In fact, Sensney does not allege that his daughter (or any other family member) ever got a finger stuck in a Glamper. He now clarifies that he did not buy it, as the FAC had suggested; it was a gift to his daughter from his mother-in-law. SAC ¶¶ 28, 51. Sensney alleges that his mother-in-law bought a Glamper from an unidentified online retailer, at an unidentified date, and shipped it to his home for his daughter. SAC ¶ 28. He also now alleges that he prompted the purchase, saying he "informed his mother that his daughter wanted the Glamper after seeing advertisements for it." *Id.* ¶ 27. Presumably he meant to refer to his mother-in-law, not his own mother, but in any event the SAC contains no details about these ads, nor does it even make clear whether it was Sensney or his daughter who saw them. *Id.* Nor does Sensney allege exactly when this happened. He says only that at some point, he learned from an unidentified source of "the traumatic incident sustained by" Ms. Watkins' daughter, and took the Glamper away from his own daughter out of fear that she too might be injured. *Id.* ¶ 29.

1  Sensney continues to assert that there have been "numerous reports" of injuries similar to the

2  one his former co-plaintiff's daughter allegedly suffered, going so far as to claim there have been

3  "significant injuries suffered by numerous children." SAC ¶¶ 5, 12. But he still alleges no facts at all

4  to support this claim, apart from the same three YouTube videos and two other internet reports as

5  before (none of which even allude to any "significant" injuries). *See* SAC ¶ 5 n.1. Despite this, he

6  has pleaded a cause of action for breach of the implied warranty of merchantability (SAC ¶¶ 50–59)

7  that is entirely premised on the allegation that the Glamper was unfit for its ordinary purpose

8  because it "contained a fundamental defect" that made it impossible to use safely (*id.* ¶¶ 55–58).

9  The only other remaining cause of action is for breach of express warranty. SAC ¶¶ 60–71.

10  Sensney alleges that MGA "warrant[ed] the toy to be safe for 'Age 3+.'" *Id.* ¶¶ 63–66, 69. The only

11  amendments he has made in response to the Court's order, however, are statements asserting that

12  this alleged warranty appeared on "the outside packaging of the Glamper" and on "the cover of the

13  manual." *Id.* ¶¶ 63–64. He does not include an image of these items or even quote what appears in

14  those locations, other than to repeat the words "Ages 3+." He also alleges that the Glamper's box

15  (which may or may not be what he means by "outside packaging") has a picture of a young girl

16  playing with the Glamper without adult supervision, which he characterizes as "visual advertising

17  support" for the alleged warranty. *Id.* According to Sensney, he "understood the express warranty to

18  mean [the Glamper] it was safe from hazard and defect for children over the age of three...." *Id.* ¶ 66.

19  Note that, apart from the words "Ages 3+," Sensney does not purport to be quoting from the

20  box or manual. He does not allege the box or manual actually said "*safe for* Ages 3+," much less

21  "safe from hazard and defect for children over the age of three." Those are his allegations as to what

22  he *understood* "Ages 3+" to mean. *See* SAC ¶¶ 60–66. Those two words, and their location on the

23  "packaging" and the manual, are the only facts he alleges about the purported express warranty.[2]

24

25

26  [2] Because Sensney does not allege any of the dates relevant to his claim (such as when his daughter received the Glamper), MGA cannot determine which version of the box or manual he is referring

27  to, or even if there was more than one version during the relevant time. It notes, however, that with respect to at least some of the Glampers sold with the original button design, the words "Ages 3+"

28  did not appear anywhere on the box, and only appeared on the manual's cover next to the "CHOKING HAZARD" warning that applies to children under three.

MGA'S MOTION TO DISMISS SAC
                                                        Case No. 3:21-cv-00617-JCS

As MGA has pointed out, its products *are* covered by a limited express warranty, which warrants to the original purchaser that the product will be free of manufacturing defects (materials and/or workmanship) for 30 days after purchase, and limits the available remedies. *See* Limited 30-Day Warranty, available at *https://www.mgae.com/customer-care/warranty*.[3] Sensney does not make any claim under this warranty, however.

## ARGUMENT

A complaint must allege facts setting forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, blanket assertions, and recitations of legal elements are not "facts" and need not be accepted as true. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Here, Sensney still has not met these requirements as to either his new claim for breach of the implied warranty of merchantability or his claim for breach of express warranty.

**I.    The implied-warranty cause of action fails for lack of vertical privity and because Sensney does not allege facts showing the Glamper was unmerchantable.**

In the FAC, Sensney asserted a claim for breach of the warranty of fitness for a particular purpose, apparently by mistake. *See Watkins v. MGA Entertainment, Inc.*, No. 21-CV-00617-JCS, 2021 WL 3141218, at *12 (noting that Plaintiffs referred to this in briefing as a merchantability claim, which they had not alleged). The SAC now asserts a claim for breach of the warranty of merchantability, but that claim fails for two reasons. First, while the Court has held that the "family member exception" to privity applies, that only solves the problem of *horizontal* privity—whether Sensney can sue when he was not the buyer. It does not solve the problem of *vertical* privity—whether the buyer, whoever it might have been, can sue the remote manufacturer rather than the immediate seller. Here, Sensney concedes vertical privity did not exist, and that defeats his claim. Second, even if Sensney could overcome that problem as well, he simply has not alleged any facts that come close to showing the Glamper is unmerchantable because it has a fundamental defect that poses a substantial safety hazard.

---

[3] The Court previously declined to take judicial notice that this warranty was the one that applied to the plaintiffs' own Glampers. Again, the lack of any dates in Sensney's complaint makes it impossible to answer this question, but neither party's current arguments rely on it in any event.

### A.      Sensney does not allege vertical privity, a required element of the claim.

Under California law, a plaintiff "must stand in vertical contractual privity with the defendant" to bring an implied-warranty claim. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). MGA raised a privity argument when moving to dismiss Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose, but did not devote much space to the argument because it was obvious that claim failed for other reasons. In its order, the Court recognized that privity is still required by California warranty law, but held this did not preclude Sensney's claim because "the privity exception for family members applies here." *Watkins*, 2021 WL 3141218, at *11–12 (citing *Hauter v. Zogarts*, 14 Cal. 3d 104, 108 (1975) and *Duross v. Home Depot U.S.A., Inc.*, No. CV 21-77006-JOJ-PRX, 2018 WL 5917861, at *7 (C.D. Cal. Aug. 21, 2018)). That is an exception to the *horizontal* privity requirement, which is how both *Hauter* and *Duross* applied it. That is, it allows Sensney to sue even though he was not the buyer. But this does not cure his inability to plead *vertical* privity between himself and/or his mother-in-law (the buyer) and MGA. As *Clemens* held, *vertical* privity remains a required element of an implied-warranty claim under California law, and that defeats Sensney's claim here.

The general rule has long been that "privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954) (holding it was error not to instruct jury that privity was required for implied-warranty claim). That is still the general rule in California today. *See, e.g.*, *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1315 (2012) (citing *Burr*); *Shay v. Apple Inc.*, No. 20-cv-1629-GPC-BLM, 2021 WL 1733385, at *6 (S.D. Cal. May 3, 2021) (same). As to horizontal privity, some courts have held (including this one) that an exception can be made for members of a buyer's family. While the scope of that exception is not clear, that is the general situation contemplated by UCC 2-318, and California's decision not to enact that section is evidence of its more liberal approach to horizontal privity. *See* Cmt. 1 to Cal. Comm. Code § 2318 (not enacted) (distinguishing between the two possible "gaps in privity"). These exceptions allow some plaintiffs who lack privity to stand in the shoes of the actual buyer.

But as the Ninth Circuit held in *Clemens*, the *vertical*-privity requirement, which is an aspect of a different UCC section, is still strictly applied in California. 534 F.3d at 1023–24 (citing Cal. Comm. Code § 2314, among other authorities). This requirement means that a buyer and seller are in vertical privity only "if they are in adjoining links of the distribution chain." *Id.* at 1023 (citing *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). "Thus, an end consumer ... who buys from a retailer is not in privity with a manufacturer" and has no implied-warranty claim against it. *Id.* Indeed, *Clemens* held, California courts have "painstakingly established the scope of the privity requirement under [section 2314], and a federal court sitting in diversity is not free to create new exceptions to it." *Id.* at 1024 (citing *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4, (1975)). Accordingly, many district courts have recognized that vertical privity is still required in California. *See, e.g.*, *Grossman v. Schell & Kampeter, Inc.*, No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997, *6 (E.D. Cal. Mar. 21, 2019); *Bhatt v. Mercedes-Benz USA, LLC*, No. CV 16-03171-TJH-RAOx, 2018 WL 5094932, *3 (C.D. Cal. Apr. 16, 2018); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 786-87 (N.D. Cal. 2017).

The cases on which Plaintiffs previously relied, *Hauter* and *Duross*, both involved horizontal privity. In *Hauter*, the plaintiff was a minor whose mother bought the product directly from the seller's catalog. 14 Cal. 3d at 108. In a footnote, the court stated that the plaintiff's lack of privity did not bar recovery because he was a member of the purchaser's family. *Id.* at 114 n.8. But vertical privity was not an issue in that case, so the court can only have been referring to horizontal privity. In *Duross*, similarly, the issue was whether the plaintiff could assert an implied-warranty claim regarding a product that his step-sister had rented. 2018 WL 5917861, at *7. Citing *Hauter* and the comment to UCC 2-318, the *Duross* court held that he could do so because he was a member of the buyer's family. *Id.* But again, vertical privity was not at issue there—notably, the plaintiffs in *Duross* sued Home Depot, from which the step-sister had rented the product; they did not sue the manufacturer. *Id.* Here, even setting aside the fact that the plaintiff is not the allegedly injured party (Sensney himself does not even allege a monetary injury), this case is different because the buyer was not in vertical privity with the defendant.

MGA'S MOTION TO DISMISS SAC
Case No. 3:21-cv-00617-JCS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19





20    Here, therefore, the family-member exception solves one part of Sensney's problem but not

21  the other: he can stand in his mother-in-law's shoes if he wishes, but he cannot walk any further in

22  them because his mother-in-law was not in vertical privity with MGA. Though the SAC alleges

23  almost no facts about the Sensney family's experience, it does concede that Sensney's mother-in-law

24  bought the Glamper "from an online retailer," not directly from MGA. SAC ¶ 28. The lack of

25  vertical privity therefore defeats Sensney's claim. *Clemens*, 534 F.3d at 1023–24.

26    Sensney may argue that the third-party-beneficiary exception solves his vertical-privity

27  problem, but as most courts (including this one) have held, it is impossible to "square that outcome

28  with *Clemens*." *In re Seagate*, 233 F. Supp. 3d at 787; *see also, e.g.*, *Klaehn v. Cali Bamboo, LLC*,

No. 19-cv-1498-TWR-KSC, 2021 WL 3044166, at *14–15 (S.D. Cal. June 14, 2021); *Obertman v. Electrolux Home Care Prods., Inc.*, 482 F. Supp. 3d 1017, 1028–29 (E.D. Cal. Aug. 31, 2020); *Mandani v. Volkswagen Group of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *5–6 (N.D. Cal. Feb. 15, 2019; *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1088–89 (S.D. Cal. Nov. 6, 2019); *Watson v. Solid Gold Pet, LLC*, No. CV 18-6479-PSG-SSx, 2019 WL 3308766, at *6 (C.D. Cal. Feb. 22, 2019). As this Court pointed out, in fact, it would be "difficult to imagine a more thorough nullification of the rule stated in *Clemens* than to hold that consumers, simply by virtue of their status as end users of a product, are implied beneficiaries of distribution contracts between manufacturers and retailers, and thus entitled to bring implied warranty claims under section 2314." *In re Seagate*, 233 F. Supp. 3d at 787. A few district courts have disagreed, but most have held *Clemens* controls. And even if this Court were inclined to hold differently now, the third-party-beneficiary argument still fails where the plaintiff has not alleged the facts necessary to support it. *See, e.g.*, *Corbett v. Pharmacare U.S., Inc.*, No. 21-cv-137-GPC-AGS, 2021 WL 2473950, at *8–9 (S.D. Cal. June 17, 2021) (citing *Loomis* and *Seagate* but declining to reach the issue for lack of the necessary allegations). Sensney's claim would fail for that reason as well.

**B.     Sensney does not allege facts showing the Glamper was unmerchantable.**

Even if vertical privity were not an issue, the merchantability claim would fail simply because the risk that a child may get her finger stuck in a hole—which Sensney's daughter did not—does not make the Glamper unfit for its ordinary purpose as a child's toy. Notably, though Plaintiffs believed they had alleged a merchantability claim in the FAC, they made little effort to argue that the Glamper was unmerchantable, and cited no authority supporting the claim. *See* ECF 26 at 4–5. Not surprisingly, the SAC also does not allege the necessary facts. It alleges only that it is possible for a child's finger to be "trapped" in the release button mechanism, and then simply asserts that this means the Glamper is "unfit for use" because of the "inability to safely use the Glamper as intended[,] rendering the Glamper unmerchantable." SAC ¶¶ 55–58. That is far from sufficient.

The implied warranty of merchantability "provides for a minimum level of quality." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). It is breached only if the product lacks "even

the most basic degree of fitness for ordinary use." *Id*. A product is not unmerchantable due to safety concerns unless the allegations describe a "substantial safety hazard." *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1247–49 (2018) (holding allegations regarding allegedly defective stop lamp switch did not suffice); *see also Watkins*, 2021 WL 3141218, at *12 (holding that Plaintiffs would be required to allege facts establishing "a fundamental defect that renders the product unfit for its ordinary purpose"; citations omitted). Sensney has not alleged facts showing that either the likelihood or the seriousness of the possible injury here—if "injury" is the right word— rise to that level.

The SAC asserts that there have been "numerous" reports of finger injuries caused by the Glamper (SAC ¶¶ 5, 12, 68), but alleges no facts to support this. Other than the allegations about the incident involving R.C. Watkins, whose mother is no longer a party, the SAC offers only five links to online reports claiming there have been other injuries. SAC ¶ 5 n.1. But even those reports refer to only a handful of incidents, along with vague statements that other reports can be found on "social media." Especially given that Sensney does not allege his own daughter was injured or even got her finger stuck, this is little more than speculation. Courts have held that far more concrete risks were not substantial enough to breach the warranty of merchantability. *See, e.g.*, *McGee v. Mercedes-Benz USA, LLC*, No. 19-cv-513-MMA-WVG, 2020 WL 1530921, at *6 (S.D. Cal. Mar. 30, 2020) (holding that even where plaintiffs alleged they lost faith in their car's safety because its airbag inflators had been recalled, that was not enough to allege car was unmerchantable); *Am. Suzuki*, 37 Cal. App. 4th at 1295–99 (holding allegedly "unacceptable risk" of rollover accident was not enough where this had happened only a "small percentage" of the time). California law offers "no support for the proposition that a remote fear or expectation of failure is sufficient to establish non-merchantability." *Am. Suzuki*, 37 Cal. App. 4th at 1298.

Similarly, though the SAC asserts that the defect poses a risk of "serious physical injury" (SAC ¶ 39), it contains no facts at all to justify using that phrase. Again, the only incident described in the SAC is the one involving R.C. Watkins, and while Plaintiffs have done their best to dramatize that incident, as to the injury itself they only allege vaguely that R.C. suffered "considerable swelling and loss of circulation to her thumb." *Id*. ¶ 23. They do not even *allege* this was "serious" or that it

was anything other than temporary, or that R.C. needed any sort of treatment (not even first aid). Nor do any of the internet videos cited in the SAC mention even one serious injury. Some of those incidents do not seem to have involved an "injury" at all, in fact. None of this even approaches alleging a "substantial safety hazard" that could render a product unfit for use.

In fact, the Ninth Circuit and other courts have made clear that a product is not "unmerchantable" merely because it may cause injury under some circumstances, which is all that Sensney alleges here. In *Birdsong*, for example, the plaintiffs alleged that the iPod was unfit for use because it was designed with earbuds and without any noise-cancelling or volume-warning features, all of which posed a risk of hearing loss. 590 F.3d at 958. The court held they had not stated an implied-warranty claim, because these allegations suggested "only that users have the option of using an iPod in a risky manner, not that the product lacks any minimum level of quality." *Id*. Following *Birdsong*, other courts have similarly held that uninjured plaintiffs cannot assert design-defect claims, under implied-warranty or fraud theories, alleging simply that a product could have been designed more safely. *See Azoulai v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 WL 1354781, at *9 (N.D. Cal. Apr. 13, 2017) (door-closing mechanism); *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1272, 1280–89 (C.D. Cal. 2016) (electronic key fob); *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660-SBA, 2013 WL 3157918, at *4–5 (N.D. Cal. June 20, 2013) (same). As these courts have stressed, at least where a product has not actually *malfunctioned*, the fact that it could have been designed more safely is actionable only as a personal-injury tort claim. *Lassen*, 211 F. Supp. 3d at 1280–89 (extensively analyzing issue). This was true in *Lassen* even though those plaintiffs could point to several reports of serious injury or death from carbon-monoxide poisoning allegedly caused by the "defect," namely the lack of a safety device that would prevent drivers from leaving their cars running in the garage. *Id*. That might state a viable personal-injury claim, the court held, but not one that sounded in warranty or consumer fraud. *Id*. at 1288–89.

*Azoulai* is even more relevant here, because it also involved fingers. 2017 WL 1354781, at *1. There, the plaintiffs alleged that they and/or their family members had been injured by defective car doors—the alleged "defect" being the lack of a sensor that would prevent their fingers from getting caught in the door. *Id*. at *1–2. They alleged (among other things) that BMW had a duty to

disclose this defect and that the defect made the cars unsafe and unmerchantable. *Id*. at *1. Again, the injuries there were more serious than alleged here, although the plaintiffs chose to pursue fraud and warranty claims rather than tort claims. *Id*. Following *Birdsong* and *Lassen*, the court held that the plaintiffs had no standing to bring such claims where the product had not actually malfunctioned, simply because they believed there was a potentially safer design. *Id*. at *5–7; *see id*. at *9 (holding merchantability claim would fail for similar reasons even if plaintiffs had standing).

Here too, Plaintiffs have never alleged that the release button *malfunctioned* or did not do what it was designed to do, only that it could have been designed to make it less likely that a user could get her finger caught. SAC ¶¶ 4 ("Due to the product's defective design, depressing the button while simultaneously pulling allows the user's finger to get caught...."); 22 (complaining that the design "allows a user's finger to become trapped...."). That was also true in *Azoulai*, but did not make the product unmerchantable. And just as in *Birdsong* and *Lassen*, Sensney alleges that the product is unmerchantable because he is concerned about a potential future injury that his daughter has not actually suffered. As shown above, he has not alleged facts showing that the risks are substantial or even material, and for this reason as well his implied-warranty claim fails.

## II. The express-warranty cause of action fails for multiple reasons, including Sensney's continued failure to allege the exact terms of a warranty.

Under California law, an express-warranty claim requires the plaintiff to allege, among other things: (1) the exact terms of the warranty; (2) that the warranty became "part of the basis of the bargain"; and (3) a breach of the warranty that proximately caused plaintiff's injury. *See Hauter v. Zogarts*, 14 Cal. 3d 104, 115 (1975); *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986); Cal. Comm. Code § 2313; Cal. Comm. Code § 2607. The Court previously held that Plaintiffs had not met the first of these requirements. *Watkins*, 2021 WL 3141218, at *10–11. Sensney's minimal new allegations about the terms of the warranty are insufficient, and he has alleged no new facts that might support the other elements of this claim.

### A. Sensney still does not plead the warranty's exact terms.

To satisfy the first element, a plaintiff must identify a "specific and unequivocal" statement the defendant made about the goods. *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir.

1997); *see also Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 44 (9th Cir. 2020); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 919 (9th Cir. 2014); *Baird v. Samsung Elec. Am., Inc.*, No. 4:17-cv-06407-JSW, 2021 WL 1799432, at *3–4 (N.D. Cal. Jan. 26, 2021). The SAC still does not clear even this first hurdle.

Here, just as in the FAC, Sensney identifies only the words "Ages 3+." SAC ¶¶ 61–65. The Court previously held this was insufficient because "the exact terms of the alleged express warranty are unclear and the FAC does not include allegations as to *where* the express warranty was printed…." *Watkins*, 2021 WL 3141218, at *11. The only new facts involve the latter problem: Sensney now alleges that the words "Age[s] 3+" appeared on the "outside packaging" of the Glamper and the cover of its manual. *Compare* FAC ¶¶ 76–84 *with* SAC ¶¶ 63–64. (He also alleges that the box bears a picture of a young girl playing with the Glamper, but claims only that this serves as "visual advertising support" for the "Ages 3+" warranty. *Id.* ¶ 65.) These new allegations describe where the words appeared, but those words still do not allege the exact terms of an express warranty.

That is, Sensney claims to *interpret* "Ages 3+" as a statement that the Glamper would "*be safe for* 'Ages 3+,'" apparently under all possible circumstances. *See, e.g.*, SAC ¶¶ 61, 63–65, 69, 71 (all alleging MGA warranted the Glamper to be "safe for 'Age[s] 3+'"), 66 ("Plaintiff Sensney understood the express warranty to mean it was safe from hazard and defect for children over the age of three…."). But the very fact that he felt required to add words to the alleged warranty to reach his desired result shows that his argument fails. He does not actually allege that "safe for 'Ages 3+'" appears on the box or manual (and it does not). If MGA had actually *used* words that specifically and unequivocally guaranteed safety, Sensney *might* have a claim. *See Hauter*, 14 Cal. 3d at 114–15 (holding "COMPLETELY SAFE BALL WILL NOT HIT PLAYER" was specific enough to constitute warranty); *Penikila v. Sergeant's Pet Care Products, LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (same where manufacturer stated product was "safe for use around pets"); *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985) (holding "very seaworthy vessel" was specific enough to warrant that vessel was seaworthy). Or he might not:

> Vague statements regarding reliability, dependability, and safety are not actionable express warranties. District courts within the Ninth Circuit have found that words such as "reliable" and "dependable" are inherently vague and general, and therefore

are non-actionable, and that words regarding "safety" and "fitness for use" are not the unequivocal sorts of statements that can give rise to contractual obligations.

*Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361-PJH, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) (citing cases). But even if the phrase "safe for Ages 3+" *could* constitute an express warranty, MGA did not use it (and Sensney does not actually allege it did). *See Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 958–61 (C.D. Cal. 2016) (holding defendant made no express warranty of safety that could cover "the unfortunate situation when his son locked himself in Plaintiff's [car]"); *Albers v. Unilever United States, Inc.*, No. CV 12-7160-DSF, 2013 WL 12138686, at *1 (C.D. Cal. Feb. 28, 2013) (holding complaint alleged no "specific express warranty" that product would be "'safe,' within whatever context and meaning of 'safe' Plaintiffs are attempting to apply.").

In fact, "Ages 3+" is not some broad warranty promise of safety under all circumstances, but a *warning* that the product was "not for children under 3 yrs" because it contains small parts that could constitute a choking hazard. *See* SAC ¶ 9 (alleging that "[t]he only *warning* provided with the Glamper is: 'CHOKING HAZARD—Small Parts. *Not for children under 3 yrs*,'" emphasis added). Far from making any specific and unequivocal promise of absolute safety, therefore, the box and manual warn that the product is *unsafe* for children under three because of a specific choking hazard.

Plaintiffs previously suggested that this safety warning, together with images of a child using the Glamper without injuring herself, could constitute "an express warranty that the toy is safe to use" in the pictured way. ECF 26 at 15. They cited no authority in support of this suggestion. *Id.* That is not surprising, because it is flatly inconsistent with the requirement that an express warranty be "specific and unequivocal"—which necessarily means it cannot merely be implied from an image and/or lack of a particular warning, which is the thrust of Plaintiffs' argument.

The Ninth Circuit rejected the first of these propositions in *Maneely*. There, passengers riding unrestrained in the cargo bed of a pickup truck were seriously injured when the truck crashed. *Maneely*, 108 F.3d at 1178. They brought express-warranty claims contending that "print and television advertising showing young people standing or sitting in the cargo beds of pickup trucks constituted a representation of fact and a promise by GMC that riding in the cargo bed is safe." *Id.* at 1181. The Ninth Circuit rejected this. *Id.* "Unlike a specific and unequivocal written statement," the court held, "these ads present visual images of the product set in certain surroundings and make no

explicit guarantees." *Id.* (contrasting this with the warnings in *Hauter.*) *Id.* Similarly, the images on the Glamper's box (which Sensney describes but does not show) are not an express warranty.

Nor is there any reason to think the result in *Maneely* would have been different if GMC had warned buyers about some *other* risk (as it almost certainly did). A warning cannot reasonably be interpreted as an express promise that any activity *not* warned about is necessarily safe. *See, e.g.*, *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 445 (D. Conn. 2021)  (holding a warning "that does not adequately highlight a particular known or knowable risk does not create an express warranty" of overall safety; citation omitted); *Sherman v. Sunsong Am., Inc.*, 485 F. Supp. 2d 1070, 1088 (D. Neb. 2007) (holding warning that "misuse may result in injury" was not an express warranty that proper use would be safe); *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. Ct. App. 1987) (holding that "the failure to provide warnings is not an affirmation of fact or promise" of safety). If that were the law, sellers would have to warn of every risk, no matter how small, diluting the effect of warnings that really matter. *See Finn. v. G.D. Searle & Co.*, 35 Cal. 3d 691, 701 (1984).

In short, the SAC still does not allege the exact terms of an express warranty—and certainly not the warranty Sensney claims MGA made.

**B.    Sensney has not pleaded facts showing the alleged warranty was "part of the basis of the bargain." He did not make any bargain.**

Even if "Ages 3+" constituted an express warranty, Sensney has not pleaded facts showing he relied on it, or that it otherwise became part of the basis of his bargain. In the opposition to MGA's previous motion, Sensney argued a buyer is not required to allege any "particular reliance" on an express warranty, and that, in fact, the seller always has the burden to prove the buyer did *not* rely. ECF 26 at 14:25–15:11, 16:4–10 (citing *Weinstat v. Dentsply Internat'l, Inc.*, 180 Cal. App. 4th 1213 (2010)). That misstates California law, which still requires reliance if the buyer and seller were not in privity. As shown above, Sensney was not in privity with MGA, but beyond that, he was not a "buyer" at all. He does not allege he entered into any bargain or transaction with *anyone*. He is not entitled to shift the burden to MGA.

As noted, the "general rule" was and still is that "privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original

seller and a subsequent purchaser who is no way a party to the original sale." *Burr*, 42 Cal. 2d at 695. In the express-warranty context, a "possible exception" to this rule might apply to buyers who "relied on representations made by the manufacturer in labels or advertising material...." *Id.* at 696. In fact, at the time the Civil Code provided that an express warranty could exist *only* if the buyer had "purchase[d] the goods relying" on an affirmation of fact or promise by the seller. *See id.* (citing former Civil Code section 1732). *Burr* suggested (though it did not hold) that if the buyer actually relied, privity would not be an issue. *Id.* at 696–97.

The Commercial Code does not use the term "reliance," but that does not mean reliance is always irrelevant, as Sensney has argued. This is because under the Code, an express warranty can exist *only* if the affirmation of fact or promise (or description of the goods) became "part of the basis of the bargain." Cal. Comm. Code § 2313(1). In *Hauter*, the Court recognized that the change from "reliance" to the "basis of the bargain" was "a significant change in the law of warranties," but also recognized that it was not clear what it actually *required*. *Hauter*, 14 Cal. 3d at 115–16 (saying the phrase was "obscure at best" and that it had "generated significant comment and disagreement"). And the Court did not answer this question in *Hauter*; it did not need to because the facts showed actual reliance in any event. *Id.* at 116–17. *Hauter* shows, therefore that actual reliance on a particular affirmation or promise establishes that it became "part of the basis of the bargain." But it does not show what Sensney claims—that a seller's affirmation or promise must *always* be considered "part of the basis of the bargain," regardless of the circumstances.

That is what Sensney suggests here, essentially arguing that this Court must presume "Ages 3+" became "part of the basis of the bargain" because he is in possession of a box or manual that has this statement on it—even though he concedes **he** did not enter into any "bargain" whatsoever, with anyone, with respect to the Glamper. That makes no sense, and California case law does not "support[ ] Plaintiff's erroneous contention that reliance is not required where privity is absent." *Coleman v. Boston Sci. Corp.*, No. 1:10-cv-01968-OWW, 2011 WL 3813173, at *4–5 (E.D. Cal. Aug. 29, 2011) (citing cases). *Hauter* did not reach the issue, and neither *Weinstat* nor *Keith* support the contention because those plaintiffs were in privity with the seller. *Id.*; *see Weinstat*, 180 Cal. App. 4th at 1225; *Keith*, 173 Cal. App. 3d at 21; *see also Keith* at 24 (noting that the plaintiff was

1   aware of the alleged warranty statements before the transaction). "Therefore, the broad statements

2   that privity is no longer a requirement for an express warranty claim are narrowed by the facts of

3   their cases." *Coleman*, 2011 WL 3813173, at *4–5.

4        Other district courts have agreed with this analysis. *See McCarthy v. Toyota Motor Corp.*,

5   No. 8:18-cv-00201-JLS, 2019 WL 3220579, at *5 (C.D. Cal. Apr. 9, 2019); *In re 100% Grated

6   Parmesan Cheese Mktg. and Sales Prac. Litig.*, 393 F. Supp. 3d 745, 762–63 (N.D. Ill. 2019) (citing

7   cases; analyzing issue under California law); *Park-Kim v. Daikin Indus., Ltd.*, No. 2:15-cv-09523-

8   CAS-KKx, 2016 WL 6744764, at *9 (C.D. Cal. 2016); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149,

9   1161 (S.D. Cal. 2015) (holding privity requirement has never been abolished, but an exception exists

10  where plaintiff has relied on the express warranty); *Keegan v. Am. Honda Motor Co., Inc.*, 284

11  F.R.D. 504, 546 (C.D. Cal. 2012) ("[I]n the absence of privity, California law requires a showing

12  that a plaintiff relied...."); *Aaronson v. Vital Pharm., Inc.,* No. 09-CV-1333-W, 2012 WL 12844724,

13  at *3 (S.D. Cal. Feb. 3, 2012) (noting that reliance remains a defense where plaintiff never read the

14  alleged warranty statements). Again, some district courts have disagreed, but the better-reasoned

15  decisions hold that either reliance or privity (or some exception to the latter) is still required. Here,

16  Sensney cannot allege the necessary facts. The alleged warranty here could not have become part of

17  the basis for Sensney's bargain because he did not make any bargain at all.

18  **III.   Sensney does not allege that any breach caused him an injury.**

19       Finally, both of Sensney's warranty claims would also fail simply because he again has failed

20  to allege any facts showing he was injured by the alleged breach. His action "specifically excludes

21  damages for personal injury," although the SAC does not allege injury other than a scraped finger.

22  SAC ¶ 35. Nor could Sensney allege an economic injury, even if the warranty had been breached,

23  because he did not buy the product. Even under MGA's Limited 30-Day Warranty, the remedy for a

24  breach is limited to replacement of the defective part or product, which the SAC does not ask for—

25  even though it alleges that the design has since been modified so that "fingers cannot get caught in

26  the button." SAC ¶ 12.  Sensney also has made no effort to plead any new facts that might support a

27  claim for equitable relief, if he is still asserting any such claim. *See Watkins*, 2021 WL 3141218, at

28  *17 (holding FAC did not allege facts showing remedies at law were inadequate or that they faced

MGA'S MOTION TO DISMISS SAC
Case No. 3:21-cv-00617-JCS

any future damage from the alleged defect). Because the SAC does not allege facts showing Sensney was injured by the alleged breach, his warranty claims fail for that reason as well.

**CONCLUSION**

The Court should dismiss Mr. Sensney's two remaining causes of action. Because this was his third opportunity to plead his case, the Court should dismiss without further leave to amend.


Dated: September 10, 2021                    Respectfully submitted,

                                             SHOOK, HARDY & BACON L.L.P.

                                             By: */s/ M. Kevin Underhill*
                                                    FRANK KELLY
                                                    AMIR NASSIHI
                                                    M. KEVIN UNDERHILL

                                             Attorneys for Defendant
                                             MGA ENTERTAINMENT